ELLINGTON, Presiding Judge.
Luis Castellanos filed this action in the State Court of Gwinnett County against Travelers Home & Marine Insurance Company to recover uninsured motorist (UM) insurance benefits, statutory penalties for Travelers’ alleged bad faith in refusing to pay benefits, and attorney fees. The trial court granted Travelers’ motion for summary judgment and denied Castellanos’ motion, and he appeals both rulings. For the reasons explained below, we reverse in part, as to the court’s grant of summary judgment in favor of Travelers.
Under OCGA § 9-11-56 (c)
[sjummary judgment is warranted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. We review *675 the grant or denial of a motion for summary judgment de novo, and we view the evidence, and the reasonable inferences drawn therefrom, in a light most favorable to the nonmovant.
(Punctuation and footnotes omitted.) Assaf v. Cincinnati Ins. Co., 327 Ga. App. 475, 475-476 (759 SE2d 557) (2014).
So viewed, the record shows the following undisputed evidence. On September 22,2009, Castellanos was injured in a wreck caused by the negligence of another driver, Jose Santiago. At the time of the wreck, Castellanos was a named insured under a UM policy Travelers issued to Lucrecia Arias, and he was driving a covered automobile.
Castellanos filed suit against Santiago for his injuries. Santiago’s liability insurance carrier, United Automobile Insurance Company, provided a defense. Castellanos also served the summons and complaint on Travelers as his UM carrier, and Travelers’ counsel participated in the suit through the end of the trial. After a trial, which Santiago did not attend, a jury returned a verdict in favor of Castellanos, and, on February 1, 2012, the trial court entered judgment against Santiago for $3,731 in compensatory damages, $3,269 in punitive damages, and $135.50 in court costs.
Castellanos demanded payment of the judgment from United as Santiago’s liability carrier. After some communication between counsel, United formally denied any coverage, based on Santiago’s “lack of cooperation in the defense of [Castellanos’] lawsuit and [his] failure to attend the resulting trial.” Castellanos then demanded that Travelers pay the compensatory damages under Arias’ UM policy. Travelers failed to pay UM benefits within 60 days of Castellanos’ demand.
Castellanos filed the instant action against Travelers, alleging, inter alia, that Travelers’ refusal to pay UM benefits was made in bad faith.[1] Castellanos filed a motion for summary judgment, and Travelers filed a cross-motion. Travelers argued that there was no evidence that United’s denial of coverage on the basis that Santiago failed to cooperate in the defense was a legal denial of coverage and, therefore, that Santiago was not an uninsured motorist as defined in Arias’ UM policy. After a hearing, the trial court granted Travelers’ *676 motion for summary judgment and denied Castellanos’ motion, finding that there was “no evidence that United reasonably requested Santiago’s cooperation, that Santiago willfully and intentionally failed to cooperate, that his failure to cooperate was prejudicial to United, and that [his] justification for failing to respond was insufficient.” Based on this determination, the trial court concluded that Castellanos “failed to present evidence that there was a ‘legal denial’ of coverage by United.”
1. Castellanos contends that the trial court’s ruling improperly shifted to him the burden of coming forward with evidence that supported United’s denial of coverage and that the trial court erred in granting Travelers’ motion for summary judgment. We agree.[2]
One essential element of Castellanos’ action against Travelers was that Santiago was the owner or operator of an uninsured motor vehicle, as defined by Arias’ UM policy and Georgia law. OCGA § 33-7-11 (j).[3] Under the applicable contractual[4] and statutory[5] definitions of an uninsured motor vehicle, an insured motor vehicle, such as the one Santiago was driving, could effectively become uninsured, retroactively to the date of an accident, when a driver’s liability carrier denies coverage, provided that such denial is, under applicable law, legally sustainable.[6] When, on the other hand, a driver’s liability carrier denies coverage and such denial is not legally sus *677 tamable, the injured driver’s UM coverage generally will not apply, because the tortfeasor is not, technically, uninsured.[7]
In this case, it is undisputed that Santiago’s liability policy required him to cooperate with United’s defense against Castellanos’ tort action and authorized United to withdraw coverage if Santiago failed to cooperate in the defense. Such cooperation clauses are enforceable under Georgia law.[8] Thus, “[u]nder applicable law, the tortfeasor’s failure to cooperate can, under certain circumstances, form the legally sustainable basis for his liability carrier’s denial of coverage.” (Citation and emphasis omitted.) Southern Gen. Ins. Co. v. Thomas, 197 Ga. App. 196, 198 (397 SE2d 624) (1990). In addition, it is undisputed that Santiago failed to appear for trial in Castellanos’ tort action and that, after judgment, United denied coverage on the basis that Santiago breached that contractual duty to cooperate in the defense, in part by failing to attend the trial.
Travelers contends that it was nonetheless justified in failing to pay UM benefits, and the trial court agreed, finding that Castellanos failed to come forward with evidence that United’s denial of coverage was a legal denial. In casting upon Castellanos the burden of coming forward with evidence that United reasonably requested Santiago’s cooperation, that Santiago willfully and unjustifiably failed to cooperate, and that his failure to cooperate was prejudicial to United, the trial court required Castellanos to discharge a burden that United would have borne as a defendant in a suit under OCGA § 33-4-6[9] for *678 bad faith penalties for denying coverage. See Vaughan v. ACCC Ins. Co., 314 Ga. App. 741, 742-743 (2) (725 SE2d 855) (2012).[10] This was improper. Given the evidence that United denied coverage under Santiago’s liability policy based on his alleged failure to cooperate with the defense, a legal basis that falls squarely within the terms of the policy and is authorized under Georgia law,* [11] this is not a case where the court is asked to presume Santiago’s status as an uninsured motorist.[12] See Southern Gen. Ins. Co. v. Thomas, 197 Ga. App. at 19 7.[13] Although evidence may exist that United’s denial of benefits *679 (on the basis that Santiago failed to cooperate with the defense) was not legally sustainable (for example, if United never requested his cooperation), once Castellanos met his threshold burden of showing that he was entitled to UM benefits, Travelers had the burden of presenting such evidence to justify its denial of coverage, as it would for any other affirmative defense.[14] See Anthony v. Larios, 256 Ga. App. 248 (568 SE2d 135) (2002) (noting that, where the plaintiff filed suit against another driver, alleging that he was an uninsured motorist, the plaintiff’s UM carrier answered in its own name, “raising the affirmative defense that [the tortfeasor] may not be uninsured”) (emphasis supplied).[15] We conclude that the trial court improperly shifted to Castellanos the burden of coming forward with evidence to rebut Travelers’ affirmative defense that Travelers failed to support. Because the undisputed evidence does not establish that *680 Santiago’s absence from the trial was involuntary or excused or that his failure to cooperate with United did not prejudice the defense, the trial court erred in finding that Travelers is entitled to judgment as a matter of law.[16] The trial court’s order is reversed, in part, to the extent it entered summary judgment in Travelers’ favor.
2. Castellanos contends that the trial court erred in denying his motion for summary judgment. Because the question of bad faith is for the jury,[17] however, this argument lacks merit.

Judgment affirmed in part and reversed in part.

Phipps, C. J., Barnes, P. J., and McFadden, J., concur. Andrews, P. J., Ray and McMillian, JJ., dissent.

 OCGA § 33-7-11 (j) provides, in pertinent part:
If the [UM] insurer shall refuse to pay any insured any loss covered by this Code section within 60 days after a demand has been made by the insured and a finding has been made that such refusal was made in bad faith, the insurer shall be liable to the insured in addition to any recovery under this Code section for not more than 25 percent of the recovery and all reasonable attorney’s fees for the prosecution of the case under this Code section. . . .

 The precise issue presented by the record, the trial court’s ruling, and Castellanos’ arguments on appeal appears to be a matter of first impression. We do not find it necessary to overrule any controlling precedent. Accordingly, we reject the dissenters’ contention, see dissent at 685, that this opinion necessitates appellate review by all 12 judges of this Court.

 Footnote 1, supra. See generally Frank E. Jenkins III, Ga. Auto. Ins. Law, §§ 37:4 (demand for payment and bad faith), 37:5 (separate action for bad faith), 37:22 (proving uninsured status of offending motorist) (2013-2014 ed., updated October 2013).

 Under the terms of Arias’ UM policy, Travelers agreed to “pay compensatory damages which an ‘insured’ is legally entitled to recover from the owner or operator of an ‘uninsured motor vehicle’ because of” an insured’s bodily injury or property damage caused by an accident. In pertinent part, the policy defines an “uninsured motor vehicle” as a motor vehicle “[t]o which a liability bond or policy applies at the time of the accident but the bonding or insurance company . . . [l]egally denies coverage[.]”

 The UM statute provides in pertinent part that “ ‘[ujninsured motor vehicle’ means a motor vehicle... as to which there is... [bjodily injury liability insurance and property damage liability insurance in existence but the insurance company writing the insurance has legally denied coverage under its policy[.]” OCGA § 33-7-11 (b) (1) (D) (iii).

 Southern Gen. Ins. Co. v. Thomas, 197 Ga. App. 196, 197 (397 SE2d 624) (1990) (“Should the [tortfeasor’s] liability carrier later deny coverage, a cause of action against the [innocent driver’s] uninsured motorist carrier may then arise, because only at that time would there be an ‘uninsured’ motor vehicle as defined in OCGA § 33-7-11 (b) (1) (D) (iii).”) (citation, punctuation and emphasis omitted); Hemphill v. Home Ins. Co., 121 Ga. App. 323, 335 (5) (174 SE2d 251) (1970) (Liability coverage can be said to have been legally denied only if the denial is, under applicable law, legally sustainable.); Frank E. Jenkins III, Ga. Auto. Ins. Law, § 32:4 (legally denied liability coverage) (2013-2014 ed., updated October 2013).

 Hemphill v. Home Ins. Co., 121 Ga. App. at 335-336 (5).

 Vaughan v. ACCC Ins. Co., 314 Ga. App. 741, 742 (2) (725 SE2d 855) (2012) (“Once a plaintiff establishes his right to payment of a judgment against the insured tortfeasor, the insurer may defend against the claim by showing that it properly withdrew its coverage of the underlying incident because its insured failed to cooperate in [his or] her defense.”); H. Y. Akers & Sons v. St. Louis Fire & Marine Ins. Co., 120 Ga. App. 800, 803 (1) (172 SE2d 355) (1969) (“The co-operation clause is a material condition of a liability policy and a breach of it in any material respect relieves the insurer of liability.”). See also OCGA § 33-7-15 (a) (Every motor vehicle liability insurance policy shall require “the insured to send his insurer, as soon as practicable after the receipt thereof, a copy of every summons or other process relating to the coverage under the policy and to cooperate otherwise with the insurer in connection with the defense of any action or threatened action covered under the policy.”); see generally Frank E. Jenkins III, Ga. Auto. Ins. Law, §§ 23:1 (necessity of cooperation of insured), 23:4 (failure of insured to appear at trial) (2013-2014 ed., updated October 2013).

 In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney’s fees for the prosecution of the action against the insurer. .. .
OCGA § 33-4-6 (a).

 Once a plaintiff establishes [the] right to payment of a judgment against the insured tortfeasor, the [tortfeasor’s liability carrier] may defend against the [plaintiff’s] claim [for bad faith refusal to pay the tort judgment] by showing that it properly withdrew its coverage of the underlying incident because its insured failed to cooperate in [the] defense. [To justify a withdrawal of coverage based on the insured’s failure to cooperate,] [t]he insurer must show: (a) that it reasonably requested its insured’s cooperation in defending against the plaintiff’s claim, (b) that its insured wilfully and intentionally failed to cooperate, and (c) that the insured’s failure to cooperate prejudiced the insurer’s defense of the claim. Once the [tortfeasor’s liability carrier] presents evidence that it was entitled to withdraw coverage, the burden shifts to the plaintiff to establish that the [insured tortfeasor’s] failure to cooperate was justified.
(Citations omitted.) Vaughan v. ACCC Ins. Co., 314 Ga. App. at 742-743 (2). See also H. Y. Akers & Sons v. St. Louis Fire & Marine Ins. Co., 120 Ga. App. at 802 (1) (To justify withdrawal of coverage, “[t]he non-co-operation must, of course, have been material — not merely technical or inconsequential in nature.”). Once the insurer presents evidence that it was entitled to withdraw coverage, the burden shifts to the plaintiff to establish that the insured’s failure to cooperate was justified in order to support the allegation that the insurer acted in bad faith in withdrawing coverage. Vaughan v. ACCC Ins. Co., 314 Ga. App. at 743 (2). See also OCGA § 9-11-9 (c) (“In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity.”).

 Every person familiar with the trial of cases by jury knows that the case of an individual defendant is seriously, if not hopelessly, prejudiced by his absence from the trial. His failure to be present in defense of the claim can have an intangible effect upon the jury both as to the question of liability and the amount of the verdict, the net effect of which is difficult to measure. Unexpected developments in the plaintiff’s evidence might be offset by an explanation on the part of the insured.
(Citations and punctuation omitted.) H. Y. Akers & Sons v. St. Louis Fire & Marine Ins. Co., 120 Ga. App. at 803 (1).

 Cf. Anthony v. Larios, 256 Ga. App. 248, 249 (568 SE2d 135) (2002) (Where an injured driver sued another driver and alleged that the other driver was uninsured, and the alleged tortfeasor defaulted and thereby judicially admitted that he was uninsured, such admission did not bind the injured driver’s UM carrier. Because the injured driver failed to present any evidence at trial that the alleged tortfeasor was uninsured, the UM carrier was entitled to judgment as a matter of law.); Hartford Accident & Indem. Co. v. Studebaker, 139 Ga. App. 386, 387 (228 SE2d 322) (1976) (Where an injured driver failed to present any evidence at trial to support his allegation that the alleged tortfeasor was uninsured, the UM carrier was entitled to judgment as a matter of law.).

 In response to the dissent at 684, we clarify that Castellanos made out a prima facie claim for UM benefits by showing that he is legally entitled to recover from Santiago for injuries he sustained in the accident; that Travelers provided him UM coverage, under Arias’ policy, which defined an uninsured motor vehicle as one to which, although a liability policy applied *679 at the time of the accident, the liability carrier legally denied coverage; that Santiago’s liability policy authorized United to withdraw coverage on the basis of a lack of cooperation and such provision is consistent with Georgia law; and that United in fact denied coverage on that basis. It is not our position that proof of Santiago’s failure to attend the trial is alone sufficient to show a lack of cooperation. See id.

 The dissenters contend that the burden of proving a legally sustainable denial of coverage “is not unduly onerous.” Dissent at 684, n. 23. But the burden of proving the opposite — Travelers’ burden — is no more onerous and can be satisfied by the same mechanisms the dissent suggests. Travelers could name United as a third-party defendant and seek a declaration as to which policy provides coverage for Castellanos’ judgment, “thus placing the burden on United to prove a legal denial of coverage.” Id. Alternatively, Travelers could depose United’s counsel to determine what efforts counsel made to secure Santiago’s cooperation. Id. In discerning the parties’ relative burdens of coming forward, we must not lose sight of the purpose of UM insurance motorist legislation, which is “to require some provision for first-party insurance coverage to facilitate indemnification for injuries to a person who is legally entitled to recover damages from an uninsured motorist, and thereby to protect innocent victims from the negligence of irresponsible drivers.” (Citation and punctuation omitted.) Hinton v. Interstate Guar. Ins. Co., 267 Ga. 516, 517 (480 SE2d 842) (1997). See also Smith v. Commercial Union Assur. Co., 246 Ga. 50, 51 (268 SE2d 632) (1980) (accord). “Uninsured motorist statutes are remedial in nature and must be broadly construed to accomplish the legislative purpose.” (Citation omitted.) Hinton v. Interstate Guar. Ins. Co., 267 Ga. at 518. Castellanos is the innocent driver here. Either Santiago’s liability policy with United should pay, or, if that policy provides no coverage and therefore Santiago is an uninsured motorist, Arias’ UM policy with Travelers should pay. The trial court’s ruling, which the dissenters would affirm, provides a windfall for one of the insurers, at the expense of the innocent driver.

 Willis v. Kemp, 130 Ga. App. 758, 759 (2) (204 SE2d 486) (1974) (When the defendant admits the essential facts of a plaintiff’s claim, and sets up other facts in justification or avoidance, such constitutes an affirmative defense for which the defendant has the burden of proof.); Williamson, Inman & Co. v. Thompson, 53 Ga. App. 821, 827 (9) (a) (187 SE 194) (1936) (If a defendant’s plea or answer admits essential facts of a petition, which show a right of recovery, but sets up other facts in justification or avoidance, or other special matters not merely elaborating or explaining a general denial, there is an affirmative defense, and the burden of proving an affirmative defense by a preponderance of the evidence rests on the defendant.); Joy T. Carmichael, 4 Ga. Proc. Evidence, § 1:18 (updated March 2014) (A defendant ordinarily has the burden of proof of establishing its affirmative defenses and must come forward with proof sufficient to establish each element of an affirmative defense.).

 In Southern Gen. Ins. Co. v. Thomas, the trial court correctly denied a UM carrier’s motion for summary judgment where the liability carrier denied coverage on the basis that the tortfeasor violated the liability policy’s cooperation clause by failing to appear at trial and the UM carrier did not contend that there was a genuine issue of material fact as to whether the particular circumstances of the tortfeasor’s failure to cooperate would form a legally sustainable basis for the liability carrier’s denial of coverage. 197 Ga. App. at 198.

 Jimenez v. Chicago Title Ins. Co., 310 Ga. App. 9, 12 (2) (712 SE2d 531) (2011); Certain Underwriters at Lloyd’s of London v. Rucker Constr., Inc., 285 Ga. App. 844, 850 (3) (648 SE2d 170) (2007); First Financial Ins. Co. v. American Sandblasting Co., 223 Ga. App. 232, 233 (2) (477 SE2d 390) (1996); St. Paul Fire & Marine Ins. Co. v. Snitzer, 183 Ga. App. 395, 397 (2) (358 SE2d 925) (1987).