297 Ga. 174
FINAL COPY

S14G1878.  TRAVELERS HOME AND MARINE INSURANCE
COMPANY v. CASTELLANOS.

HUNSTEIN, Justice.

In this dispute over recovery under an uninsured motorist (UM) insurance policy, we granted certiorari to consider the burden of proof on summary judgment as between the insured plaintiff and the UM carrier, where the UM carrier has denied coverage based on a claim that the at-fault driver was not "uninsured" as defined in the UM policy because the driver's liability carrier had not "legally denied" coverage.  We conclude that the Court of Appeals erred in placing the burden of proof on the UM carrier in this instance, and we therefore reverse.

In connection with a 2009 car accident, Appellee Luis Castellanos obtained a judgment against Jose Santiago for compensatory and punitive damages.  In the tort litigation, Santiago was defended by his insurer, United Automobile Insurance Company; Santiago was absent from trial.  After the trial, United offered to settle with Castellanos for an amount less than the total

judgment, claiming that punitive damages were not covered under Santiago's policy. After Castellanos rejected United's offer, United denied coverage to Santiago on the ground that he had failed to cooperate in defending the lawsuit as required under his policy.

Castellanos then sought payment of the judgment from his uninsured motorist carrier, Travelers Home and Marine Insurance Company. Travelers had participated in discovery in the underlying tort suit and its counsel had attended the trial. The Travelers policy provides coverage for, inter alia, compensatory damages that an insured is "legally entitled to recover from the owner or operator of an 'uninsured motor vehicle.'" An "uninsured motor vehicle" is defined, in pertinent part, as a motor vehicle "[t]o which a liability bond or policy applies at the time of the accident but the bonding or insurance company . . . [l]egally denies coverage."[1] Castellanos made a written demand for payment under his UM policy, but Travelers never responded to the demand. Castellanos thereafter sued Travelers for bad faith refusal to pay under its policy. See OCGA § 33-7-11 (j) (authorizing suit for recovery of penalties and

---

[1] This policy language is consistent with the Georgia Uninsured Motorists Act. OCGA § 33-7-11 (b) (1) (D) (iii).

attorney fees for insurer's bad faith refusal to pay covered loss). As part of its defense, Travelers contends that United did not "legally deny" coverage under Santiago's policy, such that Santiago was not an "uninsured motorist" and Castellanos' accident was not covered under the UM policy.

On cross-motions for summary judgment, the trial court agreed with Travelers, concluding that Castellanos had "failed to present evidence that there was a 'legal denial' of coverage by United." A fractured Court of Appeals reversed the award of summary judgment to Travelers, holding that the trial court had improperly shifted the burden onto Castellanos to come forward with evidence to rebut Travelers' defense. Castellanos v. Travelers Home & Marine Ins. Co., 328 Ga. App. 674 (1) (760 SE2d 226) (2014). The majority concluded:

> Although evidence may exist that United's denial of benefits (on the basis that Santiago failed to cooperate with the defense) was not legally sustainable (for example, if United never requested his cooperation), once Castellanos met his threshold burden of showing that he was entitled to UM benefits, Travelers had the burden of presenting such evidence to justify its denial of coverage, as it would for any other affirmative defense.

Id. at 678-679. The dissent disagreed, opining that it was Castellanos' burden to show that Santiago was an uninsured motorist and that, as part of that

3

showing, Castellano bore the burden, on motion for summary judgment, of producing evidence that United had legally denied coverage. Id. at 680-685 (McMillian, J., dissenting). The dissent further opined that the mere fact that Santiago had failed to appear at trial was not sufficient to meet this burden and that Castellanos was required to furnish "proof, at the very least, that the insurer made good faith efforts to secure the insured's attendance and/or cooperation." Id. at 685. This, the dissent opined, Castellanos had failed to do.

We granted certiorari to clarify the burden of proof issue. We agree with the Court of Appeals' dissenting judges as to the proper allocation of the burden of proof; we also agree that Castellanos failed to satisfy this burden.

1. We adopt the straightforward analysis employed by the Court of Appeals' dissent regarding the parties' relative burdens of proof on Travelers' motion for summary judgment:

> It is well settled . . . that Castellanos, as the insured, had "the . . . burden to prove (1) the existence of a policy of liability insurance containing uninsured motorist protection, and (2) that [Santiago] was an uninsured motorist at the time of the [wreck]". . . .
>
> This requirement is simply a reiteration of the principle that an insured claiming an insurance benefit "has the burden of proving that a claim falls within the coverage of the policy." Thus, "[t]o establish a prima facie case on a claim under a policy of insurance

4

the insured must show the occurrence was within the risk insured against." . . .

The applicable policy provisions state that Travelers agreed to "pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle'" because of an insured's bodily injury or property damage caused by an accident. The Policy defines an "uninsured motor vehicle" in pertinent part as "a land motor vehicle or trailer of any type . . . [t]o which a liability bond or policy applies at the time of the accident but the bonding or insurance company . . . *[l]egally denies coverage.*" (Emphasis supplied.) . . . And this Court has held that "coverage [cannot] be said to have been legally denied unless the denial is, under applicable law, legally sustainable." (Emphasis omitted.)

(Citations omitted.) <u>Castellanos</u>, 328 Ga. App. at 680-681 (McMillian, J., dissenting).

Thus, in order to present a prima facie case for coverage and thereby withstand Travelers' motion for summary judgment on his bad faith refusal to pay claim, Castellanos bears the burden of presenting evidence that Santiago's vehicle was an uninsured motor vehicle under the UM provisions of the Travelers policy. Where, as here, Castellanos avers that Santiago's vehicle was uninsured by virtue of United's denial of coverage, Castellanos must show that this denial was legally sustainable. See <u>Southern General Ins. Co. v. Thomas</u>, 197 Ga. App. 196, 197 (397 SE2d 624) (1990); Frank E. Jenkins III et al., Ga.

5

Automobile Insurance Law § 32:4 (a) (2014-2015 ed.).

To justify the denial of coverage for an insured's non-cooperation under Georgia law, the insurer must establish:

> (a) that it reasonably requested the insured's cooperation in defending against the plaintiff's claim, (b) that its insured wilfully and intentionally failed to cooperate, and (c) that the insured's failure to cooperate prejudiced the insurer's defense of the claim.

Vaughan v. ACCC Ins. Co., 314 Ga. App. 741, 742-743 (2) (725 SE2d 855) (2012); see also Cotton States Mut. Ins. Co. v. Proudfoot, 123 Ga. App. 397 (3) (181 SE2d 305) (1971); H.Y. Ayers & Sons, Inc. v. St. Louis Fire & Marine Ins. Co., 120 Ga. App. 800 (3) (172 SE2d 355) (1969). Here, Castellanos must prove these same elements to demonstrate that United's denial of coverage was legally sustainable and that, therefore, Santiago was an uninsured motorist under the Travelers policy. To withstand Travelers' motion for summary judgment, Castellanos must come forward with "'specific evidence giving rise to a triable issue'" on each of these elements. Cowart v. Widener, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010). Specifically, Castellanos bears the burden of producing evidence that (1) United reasonably requested Santiago's cooperation in the tort litigation; (2) Santiago wilfully and intentionally refused to cooperate; and (3)

6

prejudice resulted therefrom.

In assessing the nature of the evidence required to discharge the plaintiff's burden in this scenario, however, we bear in mind that "[u]ninsured motorist statutes are remedial in nature and must be broadly construed to accomplish the legislative purpose." Smith v. Commercial Union Assur. Co., 246 Ga. 50, 51 (268 SE2d 632) (1980). That "legislative purpose" is

> to require some provision for first-party insurance coverage "to facilitate indemnification for injuries to a person who is legally entitled to recover damages from an uninsured motorist, and thereby to protect innocent victims from the negligence of irresponsible drivers."

Id. Accordingly, in these circumstances, we must be mindful that the plaintiff is a stranger to the relationship between the tortfeasor and its insurer and that, therefore, the plaintiff's access to the information necessary to establishing his claims will be limited. In obtaining such evidence, the plaintiff will likely be compelled to resort to discovery from the insurer regarding its efforts to contact its insured and its lack of success in securing cooperation; given its potential liability for refusal to pay a covered claim, we would expect the insurer to maintain documentation to substantiate its non-cooperation defense, and requiring the plaintiff to obtain such evidence to establish his resulting

7

entitlement to UM coverage is not unreasonable.

However, regarding the prejudice element, concrete evidence may be difficult, if not impossible, for the plaintiff to obtain. Nevertheless, in some circumstances, the likelihood of prejudice may be so high that it can be presumed, even in the absence of concrete evidence. The complete absence of the tortfeasor from trial is such a circumstance. As our Court of Appeals has explained:

> Every person familiar with the trial of cases by jury knows that the case of an individual defendant is seriously, if not hopelessly, prejudiced by his absence from the trial. His failure to be present in defense of the claim can have an intangible effect upon the jury both as to the question of liability and the amount of the verdict, the net effect of which is difficult to measure. Unexpected developments in the plaintiff's evidence might be offset by an explanation on the part of the insured. This is particularly true where, as here, the insured is a material witness as to the issues, or some of them.

(Citations and punctuation omitted.) H.Y. Ayers & Sons, Inc., 120 Ga. App. at 803. A number of courts have presumed prejudice to the insurer when the insured is completely absent from trial. See id. (citing authorities presuming that insured's wilful failure to attend trial to aid in his defense is prejudicial). Such a presumption seems especially warranted in the UM context, where the

plaintiff and his UM insurer are strangers to the relationship between the tortfeasor and the tortfeasor's insurer, and where establishing prejudice from the tortfeasor's absence essentially requires the plaintiff to undercut his own legal position vis-à-vis the tortfeasor by positing that, had the tortfeasor cooperated, the tortfeasor would have fared better in the tort litigation. Accordingly, in the UM context, a plaintiff may rely on a presumption that the tortfeasor's complete absence from trial prejudiced the tortfeasor's insurer so as to permit that insurer to lawfully deny coverage to the tortfeasor, subject to rebuttal by the UM carrier.

2. Applying this presumption of prejudice and finding no evidence here to rebut it, we are left to assess whether Castellanos has adduced evidence that United reasonably requested Santiago's cooperation in the tort litigation and that Santiago wilfully and intentionally failed to cooperate. Having carefully reviewed the record, we find that Castellanos has failed to satisfy this burden. As both the trial court and the Court of Appeals' dissent noted, Castellanos has presented absolutely no evidence regarding the nature and extent of United's efforts to contact Santiago regarding the tort litigation.[2] While it is undisputed

---

[2] In fact, we have uncovered no evidence that Santiago had any actual notice of the litigation at all, which, if true, would prevent a finding that Santiago had wilfully and intentionally failed to participate in it. Though Castellanos claims to

9

that Santiago failed to appear for trial and that the interrogatory responses submitted on his behalf by counsel are substantially incomplete, there is no evidence in the record regarding what measures United took to secure his presence and participation. Though Castellanos asserted in his brief and at oral argument that United issued a reservation of rights to Santiago based on his non-cooperation, the record contains no actual proof thereof.[3] While Castellanos also referred to statements in place made by United's counsel at trial to the effect that Santiago had relocated to Mexico, the record contains no trial transcript reflecting such comments.[4] In addition, while Santiago's son attested in an affidavit that his father had relocated to Mexico, this fact alone demonstrates nothing about United's efforts to contact him regarding the

---

have perfected service on Santiago, the record reflects only that a summons was served on Santiago's son, who was also named in the tort litigation, and who attested via affidavit that his father did not reside with him at the time of service or at any point during the pendency of the tort litigation.

[3] Rather, on this point, the record contains only Castellanos' unverified complaint averring that United had issued such a reservation of rights and Travelers' answer, averring that it lacked information sufficient to admit or deny this allegation.

[4] Indeed, it appears that the trial was not transcribed.

10

litigation.[5] All that appears in the record other than allegations in pleadings and briefs is the letter — which has nowhere in the record even been formally authenticated — by which United denied coverage for Castellanos' claim, citing Santiago's "lack of cooperation in the defense of this lawsuit" and "failure to attend the resulting trial." This letter contains no information regarding United's efforts to contact Santiago.

We are sympathetic to Castellanos, who has endured years of litigation in a fruitless attempt to obtain and satisfy a judgment, first against the tortfeasor whose negligence caused his injuries, next against the tortfeasor's insurer, and finally against his own UM carrier, to whom he has duly paid premiums to protect himself against just such an eventuality. But our sympathy for Castellanos' unfortunate plight cannot justify suspension of the procedural and evidentiary standards governing these proceedings. Because Castellanos has failed to adduce any evidence of United's efforts to secure Santiago's cooperation or Santiago's wilful and intentional disregard thereof, he has failed to satisfy his burden of establishing a genuine issue of material fact, see Cowart,

---

[5] The statements in this affidavit are somewhat suspect in any event; though the affidavit states that Santiago relocated to Mexico in May 2009, the car accident with Castellanos did not occur until September 2009.

287 Ga. at 623, on either of these essential elements of his claim of entitlement to UM coverage. Accordingly, Travelers is entitled to summary judgment, and the trial court was correct in so holding.

Judgment reversed. All the Justices concur.

Decided June 1, 2015.

Certiorari to the Court of Appeals of Georgia – 328 Ga. App. 674.

Magill Atkinson Dermer, David M. Atkinson, Ariel E. Shapiro, for appellant.

Larry E. Stewart, for appellee.