**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J., and BOGGS, J.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 20, 2015**

# In the Court of Appeals of Georgia

A15A0800. MABRY v. STATE FARM MUTUAL AUTOMOBILE
    INSURANCE COMPANY.

PHIPPS, Presiding Judge.

Frank Mabry appeals the grant of summary judgment to his uninsured/underinsured motorist (UM) insurance carrier, State Farm Mutual Automobile Insurance Company, in his action seeking damages for personal injuries arising from an automobile collision. In granting the motion, the court found that Mabry could not recover such damages from State Farm because the amount of medical expenses and workers' compensation benefits he had already received exceeded the available UM coverage. For the reasons that follow, we reverse.

"Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. On appeal, we

review a trial court's summary judgment ruling de novo, construing the evidence and all reasonable inferences in the light most favorable to the nonmovant."[1]

So construed, the evidence showed the following. In June 2009, a vehicle Mabry was driving in connection with his employment was struck by a vehicle being driven by Maurice Pope. Mabry sustained an injury to his back and, as a result, underwent surgery and extensive medical treatment. Mabry averred (in a March 14, 2014 affidavit) that, as a result of the collision, he had been unable to work since February 8, 2010. Pope had liability insurance through Warner Insurance Company, with policy limits of $100,000.[2] Warner Insurance paid to Mabry the policy limits of $100,000, and he released Pope except to the extent other insurance coverage was available, including UM coverage.[3]

---

[1] *Cottingham & Butler v. Belu*, 332 Ga. App. 684, 685 (774 SE2d 747) (2015) (citations omitted).

[2] *Allstate Fire & Casualty Ins. Co. v. Rothman*, 332 Ga. App. 670, 671, n. 1 (774 SE2d 735) (2015) ("[A]n 'uninsured motor vehicle' is defined to include an underinsured vehicle, i.e., an insured vehicle whose insurance coverage is insufficient to compensate fully an individual injured in an accident involving that vehicle.").

[3] See generally OCGA § 33-24-41.1 (regarding limited release); *Rodgers v. St. Paul Fire & Marine Ins. Co.*, 228 Ga. App. 499, 500-501 (1) (492 SE2d 268) (1997) (limited release of tortfeasor does not bar injured party from proceeding against tortfeasor or UM carrier).

At the time of the collision, Mabry had in effect three State Farm automobile insurance policies, each of which carried $25,000 of UM coverage, for a total of $75,000 in UM benefits. Mabry also had optional medical coverage through the policies, pursuant to which State Farm paid $25,000 in medical benefits for his treatment in connection with the collision. Mabry additionally received workers' compensation medical benefits in the amount of $62,307.29 (as of June 20, 2013). Mabry's medical expenses exceeded $114,932.45 (as of January 18, 2011).

Mabry also received workers' compensation disability income benefits totaling $99,596.92 (as of March 14, 2014). As of that date, he had lost earnings totaling $159,926.48.

In March 2013, Mabry filed this personal injury action against Pope, seeking damages for medical expenses, lost earnings, and pain and suffering, alleging that, inter alia, he had incurred medical expenses and lost earnings, and that in the future he would lose earnings, be required to undergo medical treatment, and incur medical expenses. State Farm was served as Mabry's UM carrier.

State Farm moved for summary judgment, asserting that nonduplication provisions in the policies prevent any recovery for expenses already paid to or for Mabry, and that the amounts already paid to him as workers' compensation medical

benefits and other medical benefits exceeded the $75,000 available in UM coverage. State Farm posited that because under the nonduplication provisions it is entitled to a set-off for those payments, it has no UM exposure in this case and is entitled to judgment as a matter of law.

In granting summary judgment to State Farm, the court stated:

[B]ased upon the express statutory language in OCGA § 33-7-11 (i), the clear and unambiguous language of the nonduplication provision in the insurance policies at issue, and construing all of the facts in [Mabry's] favor, this Court finds that the amounts previously paid to [Mabry] under both workers' compensation law and other medical payments by State Farm exceed the amount available from State Farm under the UM provisions and [Mabry] would not be entitled to recover any further sums from State Farm as a matter of law.

1. Mabry contends that the court erred by granting summary judgment to State Farm because the damages sought do not duplicate damages already paid pursuant to workers' compensation and medical coverage provisions in his insurance policies. He asserts that the payments previously made do not cover the losses sought in this action - such as future medical expenses and lost wages in amounts greater than those compensated, and losses in entirely separate categories, such as pain and suffering. Mabry posits that UM coverage extends to such losses, and that nothing in the

4

policies' nonduplication provisions changes or avoids his protection against underinsurance.

Pursuant to OCGA § 33-7-11 (i):[4]

In addition to any offsets or reductions contained in the provisions of division (b) (1) (D) (ii) of this Code section, . . . the provisions of the policy providing the coverage required by this Code section may . . . exclude any liability of the insurer for . . . personal or bodily injury or death *for which the insured has been compensated pursuant to "medical payments coverage," . . . or compensated pursuant to workers' compensation laws.*[5]

OCGA § 33-7-11 (b) (1) (D) (ii) pertinently provides that UM

coverages shall apply to the insured's losses in addition to the amounts payable under any available bodily injury liability and property damage liability insurance coverages. The insured's uninsured motorist coverage shall not be used to duplicate payments made under any available bodily injury liability insurance and property damage liability insurance coverages but instead shall be available as additional insurance coverage in excess of any available bodily injury liability insurance and property

---

[4] The legislature amended OCGA § 33-7-11, effective January 1, 2009. See Ga. L. 2008, p. 1192, §5 (providing that the amendment to this Code section shall apply to all policies issued, delivered, issued for delivery, or renewed on and after January 1, 2009). Inasmuch as the policies here were issued or renewed on or after January 1, 2009, the amended version of OCGA § 33-7-11 (i) applies.

[5] (Emphasis supplied.)

damage liability insurance coverages; provided, however, that the insured's combined recovery from the insured's uninsured motorist coverages and the available coverages under the bodily injury liability insurance and property damage liability insurance on such uninsured motor vehicle shall not exceed the sum of all economic and noneconomic losses sustained by the insured. For purposes of this subdivision, available coverages under the bodily injury liability insurance and property damage liability insurance coverages on such motor vehicle shall be the limits of coverage less any amounts by which the maximum amounts payable under such limits of coverage have, by reason of payment of other claims or otherwise, been reduced below the limits of coverage[.]

Regarding "'added on' or excess UM coverage," "the applicable limits of liability are available to cover any damages an insured suffers which exceed the tortfeasor's policy limits."[6]

Under Georgia law, an insurer may fix the terms of its policy as it wishes, provided the terms are not contrary to law.[7]

We bear in mind that

---

[6] *Allstate Fire and Casualty Ins. Co.*, supra at 672, citing OCGA § 33-7-11 (b) (1) (D) (ii) (I).

[7] *Robertson v. 21st Century Nat. Ins. Co.*, 327 Ga. App. 545, 548 (1) (759 SE2d 614) (2014) (physical precedent only).

[t]he purpose of uninsured motorist or UM coverage is to place the injured insured in the same position as if the offending uninsured motorist were covered with liability insurance. . . .The Georgia uninsured motorist statute is designed to protect the insured as to his actual loss, within the limits of the policy or policies of which he is a beneficiary.[8]

Further,

[u]ninsured motorist statutes are remedial in nature and must be broadly construed to accomplish the legislative purpose. That legislative purpose is to require some provision for first-party insurance coverage to facilitate indemnification for injuries to a person who is legally entitled to recover damages from an uninsured motorist.[9]

The State Farm policies at issue include the following provisions:

**1. Uninsured Motor Vehicle Coverage (Excess)**

a. . . (1) The most we will pay for all damages resulting from bodily injury to any one insured injured in any one accident . . . is the lesser of:

---

[8] *Donovan v. State Farm Mut. Auto. Ins. Co.*, 329 Ga. App. 609, 611 (765 SE2d 755) (2014).

[9] *Travelers Home & Marine Ins. Co. v. Castellanos*, 297 Ga. 174, 178 (1) (773 SE2d 184) (2015) (punctuation omitted).

7

(a) the difference between the amount of the insured's bodily injury damages and the sum of all applicable insurance and self-insurance for bodily injury liability; and

(b) the limit shown under "Each Person". . . .

**Nonduplication**

We will not pay under Uninsured Motor Vehicle Coverage any damages: . . .

2. that are paid or payable to or for the insured under any workers' compensation law; or

3. that have already been paid as expenses under Medical Payments Coverage of this policy, the medical payments coverage of any other policy, or other similar vehicle insurance.

Mabry asserts that he is not seeking from State Farm amounts already paid under workers' compensation law or already paid as expenses under medical payments coverage of the policies or any other policy, as contemplated by the nonduplication provisions. Instead, he contends that he seeks only uncompensated losses (up to the UM policy limits of $75,000). These losses, he asserts, include entire categories of compensation for which he has received nothing, such as future medical expenses, future lost earnings, and past and future pain and suffering. He adds that he has received only partial compensation, even within the categories of past medical

expenses and lost wages, and that the trial court erred by interpreting the policies' nonduplication provisions as allowing State Farm to reduce its payment by each dollar he received from workers' compensation and for medical expenses, when the UM coverage extends to the entire gap between his losses and his relevant recovery.

We hold that OCGA § 33-7-11 (i) and the policies' nonduplication provisions do not relieve State Farm of its obligation to pay for uncompensated losses (up to the UM policy limits), and that State Farm is not entitled to summary judgment.

"When we consider the meaning of a statute, we look first to the text of the (statute), and if the text is clear and unambiguous, we look no further, attributing to the (statute) its plain meaning."[10] The plain meaning of OCGA § 33-7-11 (i), as pertinent to this case, is that a UM carrier can set off benefits which its insured may have received for medical payments coverage or workers' compensation.[11]

---

[10] *Carter v. Progressive Mountain Ins*., 295 Ga. 487, 489-490 (761 SE2d 261) (2014) (citation and punctuation omitted).

[11] *Dees v. Logan*, 282 Ga. 815-816 (653 SE2d 735) (2007) (plain meaning of former version of OCGA § 33-7-11 (i) was that UM carrier could set off benefits insured received to compensate for property loss; because the statute did not mention benefits received for personal injury, the court concluded that the legislature did not intend to authorize an insurer to set off benefits for personal injury; thus, where the UM policy permitted a set-off for personal injury benefits, it was in conflict with the plain mandate of the statute and the policy provision was void).

9

At the same time, "[u]nder OCGA § 33-7-11 (b) (1) (D) (ii) (I), recovery under the UM policy will be limited to the insured's losses in addition to the amounts payable under any available [liability] coverages," and "the insured's combined recovery from the insured's uninsured motorist coverages and the available [liability] coverages . . . shall not exceed the sum of all economic and noneconomic losses sustained by the insured."[12] UM coverage cannot be used to duplicate payments made under available liability insurance coverages, but it is available as additional insurance coverage, i.e., coverage in excess of any available bodily injury liability insurance.[13]

Consistent with the statute, the policies provide that State Farm will pay (up to the UM policy limits) the difference between the amount of Mabry's bodily injury damages and the sum of all applicable insurance and self-insurance for bodily injury liability. Thus, the policies obligated State Farm to pay for Mabry's personal injury damages that were not compensated (up to the UM policy limits).

Also consistent with the statute, the policies' nonduplication provisions state that State Farm will not duplicate payments made under workers' compensation law

---

[12] *Carter*, supra at 492-493.

[13] OCGA § 33-7-11 (b) (1) (D) (ii) (I).

or payments made as expenses under medical payments coverage. The relevant policy provisions do not preclude recovery for uncompensated losses remaining after payments contemplated by the policies have been made. Nor do they allow Mabry to receive more than his actual damages, as they specify that his combined recovery from the UM coverage and the available coverages under the bodily injury liability insurance shall not exceed the sum of all economic and noneconomic losses he sustained. Mabry would only be recovering sums he is due from Pope, the owner of the underinsured vehicle, and benefits he would be entitled to receive from other sources.[14]

2. Mabry contends that the trial court erred by failing to authorize a special verdict form to ascertain the relationship between the payments to date and Mabry's losses. He adds that this court should establish for the trial court the method for

---

[14] See generally *Dees*, supra at 817; *McCombs v. State Farm Mut. Auto. Insurance*, 200 Ga. App. 28 (406 SE2d 549) (1991); *Hudson v. Whited*, 250 Ga. App. 451, 452 (552 SE2d 447) (2001) (UM policy provisions that reduce an insurer's liability by amounts payable from other insurance are contrary to the UM statute if they thwart the insured's ability to recover all sums the insured is legally entitled to recover).

ascertaining the extent of his underinsurance. However, the propriety of any such special verdict form and its contents is a matter to be addressed on remand.[15]

*Judgment reversed. Doyle, C. J., and Boggs, J., concur*.

---

[15] See generally *Wellstar Health Sys. v. Sutton*, 318 Ga. App. 802, 805 (3) (734 SE2d 764) (2012).