**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 29, 2017**

# In the Court of Appeals of Georgia

A17A0943. GEORGIA FARM BUREAU MUTUAL INSURANCE
     COMPANY v. ROCKEFELLER.

BETHEL, Judge.

Georgia Farm Bureau Mutual Insurance Company ("Georgia Farm Bureau") appeals from the trial court's denial of its motion for summary judgment and the court's grant of partial summary judgment in favor of Jerry Rockefeller. Georgia Farm Bureau argues that the trial court misapplied OCGA § 33-7-11 (i) with regard to the limitation of liability provision in the uninsured motorist ("UM") insurance policies that Rockefeller holds with Georgia Farm Bureau. However, because we agree with the trial court's interpretation of the statute and its application to the facts of this case, we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56(c). We review a trial court's decision on a motion for summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Ass'n of Savannah, Inc. v. Chatham Cty.*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

The material facts of this case are undisputed. Rockefeller was involved in a two-car auto accident from which he sustained injuries. He filed suit against the driver of the other vehicle. Georgia Farm Bureau, the insurer who provided UM insurance coverage to Rockefeller, was not named in the suit but was served with a copy of Rockefeller's complaint pursuant to OCGA § 33-7-11 (d) after Rockefeller determined that the other driver was likely underinsured.[1]

The other driver's insurer paid $25,000 to Rockefeller in settlement of his claim against the driver. Additionally, because Rockefeller was working at the time

---

[1] OCGA § 33-7-11 (d) provides, in part, that "[i]n cases where the owner or operator of any vehicle causing injury or damages is known, and either or both are named as defendants in any action for such injury or damages, and a reasonable belief exists that the vehicle is an uninsured motor vehicle under subparagraph (b)(1)(D) of this Code section, a copy of the action and all pleadings thereto shall be served as prescribed by law upon the insurance company issuing the policy as though the insurance company were actually named as a party defendant . . . ."

of the accident, he received workers' compensation benefits totaling $197,966.55 for his injuries. However, because his ongoing workers' compensation award provided a weekly amount that was less than the wages he was earning at the time of the accident, he accumulated $183,022.38 in lost wages for which he was not compensated. Rockefeller did not receive any compensation for past and future pain and suffering or future medical expenses either through his workers' compensation award or through his settlement with the other driver.[2]

Because the other driver did not have sufficient insurance coverage to pay for Rockefeller's remaining damages, Rockefeller sought additional compensation under four UM policies he held with Georgia Farm Bureau that were in effect at the time of the accident. Each policy provided up to $25,000 in UM benefits for a combined

---

[2] We note, of course, that a workers' compensation award is the exclusive remedy of the employee against his employer for damages suffered due to workplace injuries, and such an award does not provide benefits from the employer for the employee's past or future pain and suffering. *See Bayer Corp. v. Lassiter*, 282 Ga. App. 346, 349 (638 SE2d 812) (2006) (Workers Compensation Act relieves employers of "liability for traditional tort claims such as . . . pain and suffering."); *Johnson v. Hames Contracting, Inc.*, 208 Ga. App. 664, 667 (4) (431 SE2d 455) (1993) ("To the extent appellant seeks redress for current or future physical injury by accident . . . and arising out of the scope of his employment, it is barred by the exclusivity provisions of the Workers' Compensation Act. "); OCGA §§ 34-9-11 (a); 34-9-23.

policy limit of $100,000. Each of the UM policies contained a "limit of liability" clause which provided, in relevant part, that

> The limit of liability . . . for this coverage is our maximum limit of liability for all damages resulting from any one accident. . . . The limit of liability shall be reduced by all sums . . . [p]aid or payable because of . . . bodily injury under any . . . Worker's Compensation law . . .

On the basis of this provision, Georgia Farm Bureau filed a motion for summary judgment on Rockefeller's claims, arguing that because the amount of workers' compensation benefits Rockefeller received exceeded the combined coverage limits of his UM policies, Georgia Farm Bureau's liability to Rockefeller under the UM policies was reduced to zero. Rockefeller, in turn, filed his own motion for partial summary judgment, arguing that his UM policies should cover up to $100,000 of his uncompensated damages, including lost wages, damages for past and future pain and suffering, and future medical expenses that were not covered by his settlement with the other driver's insurer or his workers' compensation award. Following a hearing, the trial court denied Georgia Farm Bureau's motion for summary judgment and granted Rockefeller's motion for partial summary judgment. This appeal followed.

OCGA § 33-7-11 (i) provides, in part, that

4

In addition to any offsets or reductions contained in the provisions of division (b)(1)(D)(ii) of [OCGA § 33-7-11], an endorsement or the provisions of the policy providing [UM coverage] . . . may contain provisions which exclude any liability of the insurer for personal or bodily injury or death for which the insured has been . . . compensated pursuant to workers' compensation laws.

Georgia Farm Bureau argues that this statute and the limit of liability provision in the UM policies allow it to offset the entirety of Rockefeller's workers' compensation award–$197,966.55–against its combined liability of $100,000 under Rockefeller's four UM policies, thus reducing Georgia Farm Bureau's liability to zero. We disagree with that reading of the statute and agree with the trial court that this provision of the UM statute does not permit the dollar-for-dollar reduction in the limits of Rockefeller's policies that Georgia Farm Bureau argues for in this case. Rather, Georgia Farm Bureau is liable up to the $100,000 combined coverage limit of Rockefeller's four UM policies for losses he sustained in the accident that were not covered by his workers' compensation award or his settlement with the other driver's insurer.

The text of OCGA § 33-7-11 (i) only permits the exclusion of a UM insurer's liability for damages "for which the insured has been . . . compensated." In this case,

5

if Rockefeller's total damages were equal to the combined amount of his workers' compensation award and the settlement he received from the other driver's insurer, Georgia Farm Bureau would have no liability because Rockefeller would have been fully compensated for all damages he sustained. But that is not the case before us.

Here, Rockefeller made claims against his UM policy for additional damages that were not covered by his workers' compensation award and his settlement with the other driver's insurer, including additional lost wages of $183,022.38 and an unspecified amount of damages for past and future pain and suffering and future medical expenses resulting from the accident. Georgia Farm Bureau does not suggest that Rockefeller has in any way been compensated for these additional damages by his workers' compensation award or the settlement.

This case is therefore analogous to this Court's decision in *Mabry v. State Farm Auto. Ins. Co.*,[3] where we held that so-called "non-duplication" provisions in a UM policy did not bar the insured from recovering from his insurer for uncompensated losses, even though the insured had received workers' compensation and medical expense benefits in excess of the UM policy limit. Importantly, in *Mabry*, as here, the insured was seeking only uncompensated losses up to the UM

---

[3] 334 Ga. App. 785 (780 SE2d 533) (2015).

policy limit, which included "entire categories of compensation for which he [had] received nothing, such as future medical expenses, future lost earnings, and past and future pain and suffering." 334 Ga. App. at 789.

Georgia Farm Bureau argues that *Mabry* is inapposite to the case before us, making much of the fact that the provision at issue here is a "limit of liability" provision, not a "non-duplication" provision like the one this Court examined in *Mabry*.[4] Under the UM statute, however, the effect of these provisions is the same even though they are different in form. OCGA § 33-7-11 (i) does not provide for a reduction in a UM *policy limit* based on sums received by the insured from other sources[5] but instead only permits the insurer to offset any amounts the insured has received from the listed sources, including workers' compensation, against the total

---

[4] In *Mabry*, the provision at issue provided that the insurer "will not pay under Uninsured Motor Vehicle Coverage any damages . . . that are paid or payable to or for the insured under any workers' compensation law . . ." 334 Ga. App. at 788 (1). In this case, the provision at issue provides that Georgia Farm Bureau's "limit of liability shall be reduced by all sums . . . paid or payable because of . . . bodily injury under any . . . Worker's Compensation law . . ."

[5] *See Hudson v. Whited*, 250 Ga. App. 451, 452 (552 SE2d 447) (2001) (refusing to enforce limit of liability clause in UM policy, noting that "insurance provisions which reduce an insurer's liability by amounts payable from other insurance are contrary to the statute if they thwart the insured's ability to recover 'all sums' the insured is legally entitled to recover." (citations omitted)).

7

amount of damages sustained by the insured. *Mabry*, 334 Ga. App. at 789. This statute says nothing about an insurer's ability to use such amounts to reduce the coverage limit of the policy. Rather, after the workers' compensation award and any other listed benefits are offset against the insured's total damages, the insurer is liable for the remaining uncompensated losses, up to the UM policy limits. *Id*. at 789-90.

Further we note that in *Mabry*, although the policy provision at issue was labeled a "non-duplication" provision, this Court analyzed the provision under both the "non-duplication" language of OCGA § 33-7-11 (b) (1) (D) (ii) as well as the provisions of OCGA § 33-7-11 (i) dealing with the ability of the insurer to exclude liability for losses for which the insured has already been compensated. *Mabry*, 334 Ga. App. at 787-90 (1). In so doing, the Court made clear that the statutes, read together, have the combined effect of preventing an insured from being compensated multiple times for the same damages while still requiring the insurer to pay for the insured's uncompensated losses up to the UM policy limit. *Id*.[6]

---

[6] Georgia Farm Bureau devoted much of its brief before this Court to a lengthy analysis of the legislative history of the current language of OCGA § 33-7-11 (i) and the "non-duplication" language of OCGA § 33-7-11 (b) (1) (D), including amendments to the latter subsection following the Supreme Court's decision in *Dees v. Logan*, 282 Ga. 815, 816 (653 SE2d 735) (2007). Because we are satisfied that the plain language of OCGA § 33-7-11 (i) and this Court's decision in *Mabry* address the issues before us, we need not go beyond those authorities in reaching our conclusion.

8

Finally, Georgia Farm Bureau argues that we should enforce the terms of the limitation of liability provisions in Rockefeller's UM policies as written because they are clear and unambiguous. While we agree with Georgia Farm Bureau that the plain terms of the limit of liability provision in Rockefeller's UM policies support the result Georgia Farm Bureau seeks, because such a provision is not authorized by the UM statute, it cannot be enforced as written. As we have previously noted, "the requirements of the statute control over the terms of the policy." *McGraw v. IDS Prop. & Cas. Ins. Co.*, 323 Ga. App. 408, 410 (744 SE2d 891) (2013); *see also Dees*, 282 Ga. at 816 ("When an uninsured motorist policy provision is in conflict with the clear intent of OCGA § 33–7–11, the policy provision is unenforceable and the statute controls." (citation omitted)); OCGA § 33–24–12(a) (an otherwise valid insurance endorsement that contains a condition or provision not in compliance with the requirements of the insurance code "shall be construed and applied in accordance with such conditions and provisions as would have applied had the . . . endorsement been in full compliance" with the insurance code). Thus, under our prior holdings and the clear directive of the insurance code, Georgia Farm Bureau's argument cannot be sustained.

Therefore, in light of the plain meaning of OCGA § 33-7-11 (i) and because this Court finds no reason to depart from its ruling in *Mabry*, we hold that the trial court did not err in finding that Georgia Farm Bureau is liable to Rockefeller for his uncompensated losses up to the coverage limit of his UM policies.

*Judgment affirmed. McFadden, P. J., and Branch, J., concur*.