A08A1175, A08A1176. PROGRESSIVE CLASSIC INSURANCE COMPANY v. NATIONWIDE MUTUAL FIRE INSURANCE COMPANY; and vice versa.

(670 SE2d 497)

ADAMS, Judge.

Progressive Classic Insurance Company and Nationwide Mutual Fire Insurance Company, both uninsured motorist (UM) carriers, filed these cross-appeals disputing priority of coverage in a case arising from the April 9, 2004 death of William Alexander.[1]

William's parents, Clifford and Judy Alexander, filed a wrongful death action alleging that their son died from injuries sustained when he was run over by a vehicle driven by Sterling A. Jackson, who is also deceased. At the time of the incident, Jackson was insured under a Nationwide automobile liability policy with $25,000 in liability coverage. The limits of that policy were tendered to the Alexanders and are not at issue in this appeal. William Alexander was the named insured on a separate Nationwide automobile liability policy with $300,000 in UM coverage. Progressive and Nationwide agree that this policy provides the first layer of UM coverage for the incident.

At issue, however, is the priority of three policies that provide potential UM coverage if the limits of the Jackson and William Alexander policies are exhausted: (1) a Nationwide automobile liability policy listing Clifford Alexander as the sole named insured,

---

[1] Nationwide and Progressive were each served with duplicate original copies of the wrongful death action as UM carriers pursuant to OCGA § 33-7-11 (d).

with $300,000 in UM coverage ("Clifford's Automobile Policy"); (2) a Nationwide personal liability umbrella policy issued to Clifford Alexander, with $2 million in UM coverage (the "Umbrella Policy"); and (3) a Progressive automobile liability policy, with $500,000 in UM coverage, initially issued to William Alexander's sister, Catherine Alexander, but later amended to add Clifford Alexander as a named insured and Judy Alexander as an insured (the "Progressive Policy").

When more than one source of UM coverage is available, Georgia law allows the policies to be stacked to satisfy a judgment. *Dairyland Ins. Co. v. State Farm Automobile Ins. Co.*, 289 Ga. App. 216, 217 (656 SE2d 560) (2008); *Canal Ins. Co. v. Merchant*, 225 Ga. App. 61, 62 (483 SE2d 311) (1997); OCGA § 33-7-11 (b) (1) (D) (ii). Georgia courts employ three tests in determining the order in which the available policies should be stacked:

> the "receipt of premium" test, the "more closely identified with" test, and the "circumstances of the injury" test. Under the "receipt of premium" test, the insurer that receives a premium from the injured insured is deemed to be primarily responsible for providing coverage. Under the "more closely identified with" test, the policy with which the injured party is most closely identified must provide primary coverage. If neither of those tests is helpful in a particular case, the courts look to the circumstances of the injury to see which policy provides primary coverage.

(Footnotes omitted.) *Dairyland Ins. Co. v. State Farm Automobile Ins. Co.*, 289 Ga. App. at 217. See also *Nationwide &c. Ins. Co. v. Progressive Bayside Ins. Co.*, 278 Ga. App. 73, 75 (628 SE2d 177) (2006).

The two insurers filed cross-motions for partial summary judgment disputing the priority of the remaining three Alexander policies. Progressive argued that the three policies should be prorated; it alternatively asserted that the Progressive Policy should come last in priority after the two Nationwide policies. Nationwide contended that the Progressive Policy should be second in line after William Alexander's because more of his relatives were named as insureds on that policy, and thus he has more connections with that policy.

The trial court declined to prorate the policies, and instead determined that the "more closely identified with" test applied. The court found that because all the Alexander family members "are ultimately covered under all of the policies, the only thing really differentiating them is the identity of the initial insured." After

determining that the "primary relationship of a child with the family members is to his parents first, and then to his siblings," the trial court held that William was more closely identified with his father than with his sister and thus that Clifford's Automobile Policy was next in priority after William's own policy. But the court further concluded that because automobile policies "by definition, apply before umbrella policies," the Umbrella Policy came last in priority after the Progressive Policy. On appeal, the parties reassert the arguments raised below.

Where one of the three tests for determining priority of UM coverage resolves the issue, Georgia courts have deemed it inappropriate to prorate stackable coverage as between uninsured motorist carriers. *Nationwide &c. Ins. Co. v. Progressive Bayside Ins. Co.*, 278 Ga. App. at 74; *Clarendon Nat. Ins. Co. v. Sledge*, 261 Ga. App. 661, 663 (583 SE2d 514) (2003); *Continental Ins. Co. v. Southern Guaranty Ins. Co.*, 193 Ga. App. 395, 395-396 (1) (388 SE2d 16) (1989). But where none of the three tests resolves the issue of priority, proration may be appropriate. See *Dairyland Ins. Co. v. State Farm Automobile Ins. Co.*, 289 Ga. App. at 216. Accordingly, before addressing the issue of proration, we must first determine if the priority of the three policies can be resolved under one of the three standard tests.

It is undisputed that the receipt of premium test is of no avail here, as Clifford Alexander paid the premium on all three policies. Turning to the second test, we must examine William Alexander's relationship to the three policies to see if we can determine if he is more closely identified with any of them. "[T]he 'more closely identified' test does not focus on the relationship between the circumstances of the collision and a particular policy of insurance; it looks instead to the relationship of the injured party to the policy." (Emphasis omitted.) *Canal Ins. Co. v. Merchant*, 225 Ga. App. at 62. In applying this test, this Court has previously found that a family relationship to a particular policy takes precedence over other relationships such as employer/employee. *Travelers Indem. Co. v. Maryland Cas. Co.*, 190 Ga. App. 455, 457 (379 SE2d 183) (1989). But in this instance, all the policies are family policies, and we must determine whether William can be more closely identified with any of the three.

William is not listed as an insured on the policies, but Clifford's Automobile Policy lists a 22-year-old male as a rated driver and occasional user of one of the insured vehicles. This reference is presumably to William, as he was 23 years old and lived with his parents at the time of his death. And while Clifford Alexander was a named insured on all of the policies at the time of the incident, he originally purchased the Progressive Policy to provide coverage on a

car he bought for his daughter, Catherine, and she was the sole named insured. Later, when Catherine left home, her parents began to drive the car and added their own names to the policy. We agree with the trial court that this factor provides a basis for distinguishing the Progressive Policy from the Nationwide policies held in Clifford Alexander's name alone. The relation between parent and child is generally held under the law to be closer than that of siblings. See, e.g., OCGA § 53-2-1 (c) (4) and (5) (under Georgia rules of inheritance, parents are in the second degree, while siblings are in the third degree to the decedent). Thus, we find that William is more closely identified with the two Nationwide policies maintained in Clifford Alexander's name alone than with the Progressive Policy.

As between the two Nationwide policies, we note that the UM provision of the Umbrella Policy specifically states that the policy is intended to provide UM coverage in excess of: (1) the amount received from, or on behalf of, the person liable for the damages; and (2) the amount received from the underlying insurance policy that the Umbrella Policy required Clifford Alexander to maintain. The policy specifically required that Clifford "maintain an underlying insurance policy or policies described in the Declarations which provide uninsured motorists coverage with the listed underlying limits." Clifford's Automobile Policy provided the specific amount of UM coverage required in the Declarations. Therefore, given the reference to William as a rated driver on Clifford's Automobile Policy, and the fact that the Umbrella Policy was specifically intended to provide excess coverage behind that policy, we find that William Alexander is more closely identified with Clifford's Automobile Policy and that policy accordingly provides secondary UM coverage behind the Nationwide policy in William's name.

Next we must determine if William can be more closely identified with either the Umbrella Policy or the Progressive Policy. Clifford Alexander is the only named insured on the Umbrella Policy, and applying the same reasoning used above, the Umbrella Policy arguably would be next in line. But the trial court placed that policy lowest in priority due to the function of an umbrella policy to provide only excess coverage.

We find, however, that the trial court's reliance upon the mere nature of an umbrella policy was misplaced. This Court has previously held that umbrella policies providing automobile liability coverage are subject to the provisions of OCGA § 33-7-11, and thus they must provide UM coverage in accordance with that statute. *Abrohams v. Atlantic Mut. Ins. Agency*, 282 Ga. App. 176, 180 (1) (638 SE2d 330) (2006). It follows therefore that umbrella policies may be stacked like other policies to provide UM coverage. OCGA § 33-7-11 (b) (1) (D) (ii).

Both insurers rely upon language from the Umbrella Policy to support their respective arguments for stacking the policies. Progressive notes that the UM provision of the policy referenced above does not mention any other potential insurance coverage. Progressive argues, therefore, that we should interpret this provision as Nationwide's commitment to provide excess coverage behind the Jackson policy and Clifford's Automobile Policy alone, without regard to other policies. Thus, Progressive argues that the Umbrella Policy should not be stacked behind the Progressive policy, but before it. But Nationwide points to the "Other Insurance" provision of the Umbrella Policy, which provides in pertinent part: "Coverage under this policy is . . . excess over any other valid and collectible insurance,[2] except in the case where the other insurance is written specifically as excess over the limits of this policy." Nationwide argues that the trial court correctly placed the Umbrella Policy last in priority, because nothing in the Progressive Policy specifically states that it is intended to provide excess coverage over that policy.

This Court has previously found, however, that the existence of such "other insurance" provisions does not preempt the application of one of the standard tests for determining priority.[3] *Continental Ins. Co. v. Southern Guaranty Ins. Co.*, 193 Ga. App. at 396 (2); *Nat. Gen. Ins. Co. v. United Svcs. Automobile Assn.*, 224 Ga. App. 821, 824 (482 SE2d 727) (1997); *Allstate Ins. Co. v. Fire &c. Ins. Co.*, 181 Ga. App. 610, 611 (353 SE2d 38) (1987). While those cases dealt particularly with the "receipt of premium" test, we find no reason why the same rule would not apply to the "more closely identified with" test and find that the "other insurance" language upon which Nationwide relies does not alter the application of that test in this case. See Jenkins & Miller, Georgia Automobile Insurance Law (2007 ed.), § 39-9. Accordingly, we find that because William Alexander is more closely identified with the Umbrella Policy held in Clifford Alexander's name alone than the Progressive Policy originally purchased for his sister, the Umbrella Policy should be third in priority behind Clifford Alexander's Automobile Policy, and the Progressive Policy should be last. We, therefore, reverse the trial court's grant of partial summary judgment to Nationwide and its denial of partial summary judgment to Progressive on that issue.

Nationwide relies, however, upon this Court's statement in the *Dairyland Ins. Co.* case that "[c]ourts may also look to 'other insurance' clauses in the contracts for resolution of the priority

---

[2] Similar language is found in the "Coverage" section of the Umbrella Policy.

[3] We note that the Progressive Policy also has its own version of an "Other Insurance" provision.

issue." 289 Ga. App. at 217. That language contradicts the cases cited above, and we note that the 1971 case upon which the *Dairyland* opinion relies for that statement did not address the issue of stacking UM policies, but rather considered which of several policies provided primary insurance and which insurer had the duty to defend. *Southern Home Ins. Co. v. Willoughby*, 124 Ga. App. 162 (182 SE2d 910) (1971). Accordingly, we hereby disapprove of the language in *Dairyland* to the extent that it conflicts with our decision in this case.

Finally, because we have found that the priority of the three insurance policies can be determined through application of the "more closely identified with" test, we agree with the trial court that proration does not apply here. See *Nationwide &c. Ins. Co. v. Progressive Bayside Ins. Co.*, 278 Ga. App. at 74.

*Judgment affirmed in part and reversed in part. Barnes, C. J., Ruffin, P. J., Johnson, P. J., Blackburn, P. J., Smith, P. J., and Andrews, Miller, Ellington, Phipps, Mikell and Bernes, JJ., concur.*

DECIDED NOVEMBER 24, 2008 —

*Carlock, Copeland, Semler & Stair, Ambadas B. Joshi, Frederick M. Valz III, Jessica C. Cabral*, for appellant.

*Hawkins & Parnell, Peter A. Jacxsens, William H. Major III*, for appellee.