**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 13, 2014**

# In the Court of Appeals of Georgia

A14A1248. DONOVAN v. STATE FARM MUT. AUTOMOBILE
INS. CO.

MILLER, Judge.

Lara Donovan was injured in an automobile accident involving a vehicle driven
by Jonathon McMillon. Donovan sued McMillon and three underinsured motorist
("UM") carriers, including State Farm, her mother's insurance carrier.[1] McMillon's
insurance carrier, Progressive Insurance Company, paid Donovan the $25,000 limits
of his liability insurance policy. State Farm subsequently moved for summary
judgment, contending that it is entitled to a set-off for the $25,000 paid by

---

[1] The other two UM carriers, Grange Mutual Casualty Company and Integon
Mutual insurance Company ("GMAC"), are not parties to this appeal. Additionally,
we note that the insurance policies are not included in the appellate record on appeal.
Nevertheless, Donovan and State Farm entered into a stipulation of facts with regard
to the accident and the insurance policies at issue in this case. Accordingly, we need
not remand this case for the trial court to supplement the record on appeal.

McMillon's insurer. The trial court granted State Farm's motion, and Donovan appeals. On appeal, Donovan contends that State Farm is not entitled to set off the $25,000 paid under McMillon's insurance policy against State Farm's $25,000 UM coverage limit. For the reasons that follow, we affirm.

"On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citations and punctuation omitted.) *Campbell v. The Landings Assn., Inc.*, 289 Ga. 617, 618 (713 SE2d 860) (2011).

So viewed, the evidence shows that in October 2009, Donovan was riding as a passenger in a pickup truck when the truck was involved in a collision with McMillon's vehicle. At the time of the accident, Donovan, who is an adult, resided with her mother in Thomasville, Georgia. Donovan sustained injuries in the accident that she claims exceed $100,000.

In addition to McMillon's $25,000 liability insurance policy issued by Progressive Insurance, three UM policies potentially provide coverage: (1) the State Farm policy issued to Donovan's mother; (2) a Grange Mutual Casualty Company

2

policy issued to Donovan's mother; and (3) a GMAC policy issued to the owner of the truck in which Donovan was riding as a passenger. Each of the UM policies has a $25,000 coverage limit. The Grange and GMAC policies are standard/excess UM policies, which potentially provide coverage in excess of McMillon's $25,000 liability insurance limits. The State Farm UM policy is a difference-in-limits policy.

In her sole enumeration of error, Donovan contends that the trial court erred in holding that State Farm is entitled to a set-off for the $25,000 in liability coverage that she received from McMillon's insurer. Specifically, Donovan argues that both stacking and priority of payments rules apply under Georgia law when more than one UM carrier is available regardless of the type of policies involved. Under the circumstances of this case, the trial court did not err in granting summary judgment to State Farm.

> The purpose of uninsured motorist or UM coverage is to place the injured insured in the same position as if the offending uninsured motorist were covered with liability insurance. . . . The Georgia uninsured motorist statute is designed to protect the insured as to his actual loss, within the limits of the policy or policies of which he is a beneficiary.

(Citations and punctuation omitted.) *State Farm Mut. Automobile Ins. Co. v. Adams*, 288 Ga. 315, 316-317 (702 SE2d 898) (2010). Under Georgia law, there are two types of available UM coverage. OCGA § 33-7-11 (b) (1) (D) (ii). The first option is an excess policy which provides for UM insurance in excess of any available liability insurance. OCGA § 33-7-11 (b) (1) (D) (ii) (I). The second option is a difference-in-limits policy which provides for UM coverage only for the amount of the difference between the available liability insurance and the limits of the insured's UM coverage. OCGA § 33-7-11 (b) (1) (D) (ii) (II).

Where more than one UM policy is available to cover an injured party's damages, Georgia law allows an insured to stack the limits of all available UM coverage to satisfy a judgment. See *Progressive Classic Ins. Co. v. Nationwide Mut. Fire Ins. Co.*, 294 Ga. App. 787, 788 (670 SE2d 497) (2008). Georgia courts employ three priority-of-payment rules or tests for determining the order in which the available UM policies should be stacked: the "receipt of premium" test, the "more closely identified with" test, and the "circumstances of the injury" test.[2] See

---

[2]     Under the "receipt of premium" test, the insurer that receives a premium from the injured insured is deemed to be primarily responsible for providing coverage. Under the "more closely identified with" test, the policy with which

4

*Progressive*, supra, 294 Ga. App. at 788. In cases involving more than one difference-in-limits UM policy, trial courts use these priority of payment rules to determine which UM carrier is entitled to a set-off for the available amount of liability insurance coverage. See *Ga. Farm Bureau Mut. Ins. Co. v. State Farm Mut. Automobile Ins. Co.*, 255 Ga. 166, 167 (336 S.E.2d 237) (1985) (applying receipt of premium test to determine which UM insurer was entitled to set-off); *Travelers Indem. Co. v. Maryland Cas. Co.*, 190 Ga. App. 455, 457 (379 SE2d 183) (1989) (applying more closely identified test).

Here, the trial court was not required to apply the priority of payment rules, because this case involves only one insurance carrier – State Farm – who is entitled to a set-off for the $25,000 that Donovan received from McMillon's liability insurance carrier. Neither Grange nor GMAC are entitled to a set-off because they provide excess UM coverage. See Ga. Auto. Ins. Law § 39-5 (d) (regardless of

---

> the injured party is most closely identified must provide primary coverage. If neither of those tests is helpful in a particular case, the courts look to the circumstances of the injury to see which policy provides primary coverage.

(Citations omitted.) *Progressive*, supra, 294 Ga. App. at 788.

5

priority of payment rules, insurers providing excess, i.e. added-on, UM coverage are not entitled to any set-off for available liability coverage). Moreover, Donovan stipulated that neither the Grange nor the GMAC policies are entitled to a set-off against McMillon's liability insurance limits.

State Farm, on the other hand, *is* entitled to a set-off under OCGA § 33-7-11 (b) (1) (D) (ii) (II) because State Farm is the sole difference-in-limits UM carrier whose policy potentially provides coverage for Donovan's claims. See Ga. Auto. Ins. Law § 39-5 (d). After applying the $25,000 set-off to the $25,000 limits under the State Farm policy, there is now no further coverage with this carrier. Accordingly, no issue of fact remains regarding the availability of UM coverage under the State Farm policy and State Farm is entitled to summary judgment as a matter of law.

*Judgment affirmed. Doyle, P. J., and Dillard, J., concur.*

6