**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 30, 2015**

# In the Court of Appeals of Georgia

A15A0266. ALLSTATE FIRE AND CASUALTY INSURANCE
        COMPANY v. ROTHMAN.

BRANCH, Judge.

Charles Rothman was injured in an automobile accident involving a vehicle driven by Duc Nyguen. The truck driven by Rothman at the time of the accident belonged to his employer, Allgood Services of Georgia. Rothman subsequently filed suit against Nyguen, seeking to recover medical expenses in excess of $53,000 and lost wages in excess of $20,000. Rothman also served the complaint on his personal automobile liability insurance carrier, Allstate Fire and Casualty Insurance Company ("Allstate"), as well as Allgood's insurer, Westfield Insurance Company ("Westfield"), in their capacity as uninsured motorist (UM) carriers.[1]

---

[1] Under Georgia law, an "[u]ninsured motor vehicle" is defined to include an underinsured vehicle, i.e., an insured vehicle whose insurance coverage is insufficient to compensate fully an individual injured in an accident involving that vehicle. See OCGA § 33-7-11 (b) (1) (D) (ii).

Nyguen was insured by Travelers Indemnity Company under an automobile liability insurance policy with a limit of $100,000. After Travelers paid Rothman the $100,000 available under Nyguen's policy, a dispute arose between Allstate and Westfield as to whether Allstate was entitled to set off the $100,000 Rothman received from Nyguen's insurer against the limits of liability otherwise available under the Allstate policy. As a result of this dispute, Rothman filed a motion in the trial court seeking a determination as to the priority of the UM coverages available under the Allstate and Westfield policies. Following a hearing on that motion, the trial court found that because Allstate had received a premium from Rothman, it was "primarily responsible for compensating [Rothman], without a set-off [against] or reduction [of its policy limits] for any recovery [Rothman received] from [Nyguen's] liability [insurer]." The trial court subsequently certified its order for immediate review, and Allstate filed an application for an interlocutory appeal, which we granted. This appeal followed. For reasons explained more fully below, we reverse the trial court's order.

To understand the current dispute, it is necessary to examine briefly the evolution of UM coverage in Georgia. Prior to 2009, all UM policies issued in Georgia were so-called "reduced by" or "difference in limits" policies which allowed

2

the UM insurer to set off against its policy limits any payments its insured received from the tortfeasor's insurer. See OCGA § 33-7-11 (b) (1) (D) (ii) (2000). Put another way, under these policies, payments received from the tortfeasor's insurer reduced the limits of liability available under the insured's UM coverage. Because prior to 2009 all UM policies were "reduced by" policies, the courts developed stacking rules (also known as priority of payment rules) to be applied in cases where more than one UM policy was available to an injured insured. See *Progressive Classic Ins. Co. v. Nationwide Mut. Fire Ins. Co.*, 294 Ga. App. 787, 788 (670 SE2d 497) (2008). These rules are used to determine which policy provides primary coverage and which policies are considered excess.[2] Id. See also *Donovan v. State Farm Mut. Auto. Ins.*

---

[2] Specifically, courts employ three tests to determine the order in which available UM policies should be stacked:

> the "receipt of premium" test, the "more closely identified with" test, and the "circumstances of the injury" test. Under the "receipt of premium" test, the insurer that receives a premium from the injured insured is deemed to be primarily responsible for providing coverage. Under the "more closely identified with" test, the policy with which the injured party is most closely identified must provide primary coverage. If neither of those tests is helpful in a particular case, the courts look to the circumstances of the injury to see which policy provides primary coverage.

*Dairyland Ins. Co. v. State Farm Automobile Ins. Co.*, 289 Ga. App. 216, 217 (656 SE2d 560) (2008) (footnotes omitted), disapproved on other grounds, *Progressive Classic*, 294 Ga. App. at 791-792.

*Co.*, 329 Ga. App. 609, 611 (765 SE2d 755) (2014), *cert. denied*, Case No. S15C0516, Feb. 2, 2015. Additionally, under these stacking rules, the policy last in line for payment is entitled to the set-off for any payments the insured received from the tortfeasor's insurer. See *Donovan*, 329 Ga. App. at 611.

Following the development of these stacking rules, the legislature amended the relevant statute effective January 1, 2009. See OCGA § 33-7-11 (b) (1) (D) (2009). Under the current law, insurers are required to offer two types of UM coverage. The first type is "added on" or excess UM coverage, which provides that the applicable limits of liability are available to cover any damages an insured suffers which exceed the tortfeasor's policy limits. See OCGA § 33-7-11 (b) (1) (D) (ii) (I). The second type of available UM coverage is the traditional "reduced by" coverage, under which the UM limits of liability are reduced by any amount that the insured received from the tortfeasor's insurer. See OCGA § 33-7-11 (b) (1) (D) (ii) (II). Insureds who elect the "reduced by" coverage generally pay a lower premium than that charged for excess or added on UM coverage. See Frank E. Jenkins and Wallace Miller, III, Ga. Automobile Ins. Law § 39:12 (d) (2014-2015 ed.).

The current case involves the two different types of UM policies available in Georgia. The Allstate policy provides "reduced by" coverage and states that its limits

4

of liability "will be reduced by all amounts paid by or on behalf of the owner or operator of the uninsured or underinsured motor vehicle." The Westfield policy provides "added on" coverage and the relevant policy provisions are set forth in an endorsement titled "GEORGIA UNINSURED MOTORISTS COVERAGE – ADDED ON TO AT-FAULT LIABILITY LIMITS." This endorsement states that Westfield's policy "will pay all sums in excess of the applicable deductible . . . that the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle.'" The Allstate policy has limits of liability of $100,000 while the Westfield policy has a UM limit of $500,000.

None of the parties dispute that to the extent Nyguen's policy limits did not did not fully compensate Rothman for the injuries he suffered, Rothman is entitled to recover under the UM provisions of the Allstate and/or Westfield policies. The parties also appear to agree that in terms of priority, the Allstate policy would provide the primary UM coverage with the Westfield policy providing excess coverage, i.e., Westfield would be required to pay only if Allstate's policy limits are exhausted. Allstate and Westfield disagree, however, as to whether Allstate is entitled to set off against its own policy limits the amount paid to Rothman by Nyguen's insurer. If Allstate is entitled to such a set-off, then its policy limits will be considered exhausted

5

and Westfield would be responsible for paying any damages incurred by Rothman in excess of $100,000. If Allstate is not entitled to claim a set-off, then it would be liable for any of Rothman's damages in excess of $100,000 and up to $200,000, while Westfield would be liable for any damages incurred by Rothman in excess of $200,000 and up to Westfield's policy limits.

In the trial court, Westfield argued that because under the stacking rules Allstate was the primary UM insurer and was therefore "first in line" for payment of UM benefits, it was not entitled to a set-off, despite Allstate's express policy language to the contrary. The trial court agreed and refused to allow Allstate a set-off against its policy limits for the payment Rothman received from Nyguen's insurer, reasoning that such a set-off would relieve Allstate of its obligation to provide any UM coverage. On appeal, Allstate argues that under the circumstances of this case, the trial court erred in applying the stacking rules so as to void Allstate's policy language and deprive Allstate of its contractual right to a set-off. In light of *Donovan*, which was decided after the trial court made its ruling, we agree.

In *Donovan*, we explained that where multiple UM carriers provide coverage but only one of those carriers provides "reduced by" coverage, then the carrier providing the "reduced by" coverage is entitled to the set-off, regardless of whether

6

that carrier would be considered primary, secondary, or excess under the stacking rules. See *Donovan*, 329 Ga. App. at 612. In such situations, it is the policy language that controls such that the carrier whose policy provides for a set-off may take that set-off, regardless of where the policy falls in priority of payment. Id. ("the trial court was not required to apply the priority of payment rules, because this case involves only one insurance carrier . . . who is entitled to a set-off"). See also Frank E. Jenkins and Wallace Miller III, Ga. Automobile Ins. Law § 39:5 (d) (2014-2015 ed.) (where more than one UM policy is at issue, "including both traditional, 'reduced' UM coverage and 'added on' UM coverage . . . the liability coverage set-off should remain intact but would simply default to the 'reduced' coverage carrier").

In this case, Allstate's is the only "reduced by" policy and so it is entitled to set-off against its policy limits the $100,000 Rothman received from Nyguen's

insurer.[3] See *Donovan*, 329 Ga. App. at 612. Accordingly, we reverse the trial court's order.

*Judgment reversed. Andrews, P. J., and Miller, J., concur.*

---

[3] The mere fact that Allstate would be considered the primary UM insurer and that allowing a set-off will relieve Allstate of any payment obligation under its UM policy does not, without more, void Allstate's contractual right to a set-off. To hold otherwise would require us to rewrite Allstate's policy to provide Rothman with a benefit that he neither selected nor paid for. This Court, however, is "without the authority to interpret, rewrite, or change [the] terms" of an unambiguous insurance policy. *Marett Properties v. Prudential Ins. Co. of America*, 167 Ga. App. 631, 633 (307 SE2d 69) (1983) (citation omitted). See also *Cotton States Mut. Ins. Co. v. Coleman*, 242 Ga. App. 531, 533 (530 SE2d 229) (2000) ("[w]hen the language of an insurance policy defining the extent of the insurer's liability is unambiguous and capable of but one reasonable construction, the courts must [apply] the contract as made by the parties") (citation and punctuation omitted); *Crouch v. Federated Mut. Ins. Co.*, 257 Ga. App. 604, 605-606 (a) (571 SE2d 574) (2002).