**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 12, 2020**

# In the Court of Appeals of Georgia

A19A1872. CLINE v. ALLSTATE PROPERTY AND CASUALTY
    INSURANCE

RICKMAN, Judge.

The issue in this appeal is the amount of uninsured/underinsured (UM) coverage available to James Brad Cline under his automobile insurance policy with Allstate Property and Casualty Insurance. The trial court ruled that Cline affirmatively elected UM personal injury coverage in the amount of $25,000 and, consequently, limited his potential recovery to that amount. Cline argues that an amendment to Georgia's UM statute, OCGA § 33-7-11, resulted in his UM coverage being equal to the policy's bodily injury liability limit of $100,000. For the reasons that follow, we affirm the ruling of the trial court.

"On appeal from the grant of summary judgment[,] this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citation and punctuation omitted.) *Donovan v. State Farm Mut. Auto. Ins. Co.*, 329 Ga. App. 609, 610 (765 SE2d 755) (2014).

The uncontroverted evidence shows that in 2016, Cline was involved in a motor vehicle accident and allegedly suffered damages totaling nearly $94,000 as of the date of the filing. He filed a civil suit against the driver of the other vehicle and served a copy of the complaint on Allstate. After settling with the other driver's insurer for the policy limits of $25,000, Cline sought recovery from Allstate under the terms of his UM policy.

A dispute arose between Cline and Allstate as to the amount of UM coverage available to Cline. The parties filed cross-motions for summary judgment to determine the amount of available coverage. Allstate contended in the trial court and continues to assert on appeal that Cline made an affirmative election in the policy, as renewed, to carry UM coverage less than his bodily injury liability limit, in the amount of $25,000; Cline argued that any such election was nullified by a 2008

2

amendment to Georgia's UM statute, the effect of which, he maintains, mandated that Allstate provide him default UM coverage in an amount equal to his liability limit of $100,000. The trial court granted Allstate's motion and concluded that Allstate's coverage was limited to $25,000. This appeal follows.

An examination of the Allstate policy shows that it was issued to Cline's wife in 2003 and insured Cline as an additional driver. In 2003, Mrs. Cline completed a coverage selection/rejection form which offered several UM coverage options. She checked a box electing to include UM coverage with a bodily injury limit equal to that of the liability limit of her policy, which at the time was $25,000 per person. In October 2008, Mrs. Cline[1] completed a second selection/rejection form on which she changed her selection to include UM coverage in an amount less than the liability limit of her policy; although her UM bodily injury limit remained $25,000 per person, her liability limit had increased to $100,000. At the same time, she also signed an "uninsured motorist coverage disclosure and acknowledgment of receipt" form which explained the UM coverage.

---

[1] In his deposition, Cline stated that he had actually signed the form on his wife's behalf.

The Clines' policy was continuously renewed until 2016. The declarations page of the policy in effect on the date of Cline's accident listed a UM bodily injury limit of $25,000 per person and a liability limit of $100,000.

In order to understand the current dispute, it is necessary to briefly examine the evolution of Georgia's UM statue, OCGA § 33-7-11. The statute requires insurers to provide UM coverage in automobile insurance policies unless the insured rejects the coverage in writing. See OCGA § 33-7-11 (a) (1), (3); *Tice v. Am. Employers' Ins. Co.*, 275 Ga. App. 125, 125-126 (619 SE2d 797) (2005). Prior to a statutory amendment in 2001, insurers were required only to provide UM coverage at a statutory minimum level, unless the insured requested greater coverage in writing. See *Tice*, 275 Ga. App. at 126. In 2001, the General Assembly amended OCGA § 33-7-11 (a) (1) to require that an insurer provide either the mandatory minimum UM coverage in the amount of $25,000 per person (or $50,000 per accident), or optional UM coverage in an amount equal to the liability coverage in the insureds' underlying policy. See Ga. L. 2001, p. 1228, § 1; see also *Tice*, 275 Ga. App. at 126. The 2001 amendment permitted an insured to "affirmatively choose [UM] limits in an amount less than the limits of liability," OCGA § 33-7-11 (a) (1) (B), but "was intended to make a policy's liability limit[ ] the default provision for UM coverage" in the

4

absence of an affirmative election of UM coverage in a lesser amount. (Citation and punctuation omitted.) *Government Employees Insurance Company v. Morgan*, 341 Ga. App. 396, 399 (1) (800 SE2d 612) (2017).

In 2008, the General Assembly again amended the UM statute to offer two different types of UM coverage. See Ga. L. 2008, p. 1192, § 1 (effective January 1, 2009). Prior to the 2008 amendment, all UM policies offered in Georgia were "reduced by" policies, "under which the UM limits of liability [were] reduced by any amount that the insured received from the tortfeasor's insurer." *Allstate Fire and Cas. Ins. Co. v. Rothman*, 332 Ga. App. 670, 672 (774 SE2d 735) (2015); see OCGA § 33-7-11 (b) (1) (D) (ii) (II). The 2008 amendment introduced the option of "added on" UM coverage, "which provides that the applicable limits of liability are available to cover any damages an insured suffers which exceed the tortfeasor's policy limits." *Rothman*, 332 Ga. App. at 672 ; see OCGA § 33-7-11(b) (1) (D) (ii) (I). The statutory amendment further mandated that UM policies include "added on" coverage by default, unless the insured requested "reduced by" coverage in writing. See OCGA § 33-7-11 (b) (1) (D) (ii) (II); see also *Rothman*, 332 Ga. App. at 672 (recognizing that policies offering "reduced by" UM coverage are generally available for a lower premium than those offering "added on" coverage).

5

The record in this case clearly establishes that in October 2008, Mrs. Cline affirmatively chose UM coverage with a bodily injury limit of $25,000 per person, which was less than the liability limit on the policy, and signed a disclosure form explaining the UM coverage. See OCGA § 33-7-11 (a) (1) (A), (B). Further, the record shows that in 2009, Allstate sent Mrs. Cline a letter informing her of the 2008 "added on" amendment in accordance with the statute. See OCGA § 33-7-11 (b) (1) (D) (ii) (III). The letter explained the difference between "reduced by" and "added on" coverage, and explicitly stated that, unless rejected, Ms. Cline's renewal policy would provide "added on" UM coverage. See OCGA § 33-7-11 (b) (1) (D) (ii) (II). Ms. Cline did not reject the "added on" coverage.

Faced with this evidence, the trial court did not err in holding that Cline affirmatively chose a UM bodily injury limit of $25,000. See OCGA § 33-7-11 (a) (1) (B). Contrary to Cline's argument, it was without consequence that Mrs. Cline's selection occurred prior to the effective date of the 2008 "added on" statutory amendment; that amendment did not impact her right to "affirmatively choose" lesser UM coverage, but rather resulted in that selected coverage being applied to damages Cline suffered that exceeded the other driver's policy limits. See OCGA § 33-7-11

6

(a) (1) (B); OCGA § 33-7-11(b) (1) (D) (ii) (I); see generally *Soufi v. Haygood*, 282 Ga. App. 593, 593-94 (639 SE2d 395) (2006); *Tice*, 275 Ga. App. at 127-128.

*Judgment affirmed. Miller, P. J., and Reese, J., concur.*