[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-12496

Non-Argument Calendar

_____

GREAT AMERICAN INSURANCE COMPANY,

Plaintiff-Counter Defendant-Appellee,

_versus_

ALLIED WORLD ASSURANCE COMPANY, INC.,

Defendant-Counter Claimant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cv-02984-AT

_____

Before JORDAN, BRANCH, and BRASHER, Circuit Judges.

PER CURIAM:

This appeal is about which of two insurance companies must foot the bill for a settlement involving their mutual insured. Great American Insurance Company paid out and sued Allied World Assurance Company, alleging that because it was the umbrella insurer and Allied World was the primary insurer, Great American was obligated to pay only "in excess" of Allied World's policy agreement. The district court agreed, granting summary judgment in Great American's favor and awarding attorney's fees under O.C.G.A. § 9-11-68(e) based on Allied World's frivolous arguments.

On appeal, Allied World makes two arguments. First, it argues the district court erred by concluding Allied World's obligation takes priority over Great American's because its policy contains an applicable "excess clause." Second, Allied World argues attorney's fees are inappropriate because its arguments were made in good faith and not frivolous. Georgia law precludes Allied World's first argument. Even so, we agree that attorney's fees are not appropriate under O.C.G.A. § 9-11-68(e). Accordingly, we affirm in part and reverse in part.

I.

Tribridge Residential is a company that manages apartment complexes. In 2014, two women were shot and killed at an

apartment complex that Tribridge managed in Decatur, Georgia. An ensuing lawsuit alleged Tribridge negligently failed to implement security and safety measures at the apartment complex and created a nuisance by allowing a dangerous environment to persist. Tribridge settled that suit with plaintiffs.

Three different insurance companies insured Tribridge. AmTrust International Underwriters DAC, an insurance company that issued Tribridge a primary commercial general liability policy, paid out its policy limit toward the settlement. Then, Allied World and Great American disagreed about which policy was the priority coverage for the rest of the settlement.

### Allied World Policy

Allied World issued Tribridge a commercial general liability policy. The policy states Allied World "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' to which this insurance applies." Although Allied World issued a "primary policy," it contains an excess clause purporting to render its coverage excess of other insurance when liability arises from Tribridge's property management activities: "With respect to [Tribridge's] liability arising out of [its] management of property for which [it is] acting as real estate manager, this insurance is excess over any other . . . insurance available to you, whether such insurance is primary or excess."

### Great American Policy

Great American issued a "Commercial Umbrella Coverage" policy which includes Tribridge as an additional insured. The policy covers "those sums in excess of the 'Retained Limit' that the 'insured' becomes legally obligated to pay imposed by law or . . . because of 'bodily injury.'" The "Retained Limit" is based on the coverage from underlying insurance policies, including coverage from Allied World. In particular, the policy contains a "schedule of underlying insurance" including Allied World's general liability coverage. The Great American policy also includes an "other insurance" clause: "If other insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance" unless "the other insurance is specifically written to be excess of this policy."

★    ★    ★

Great American paid the rest of the settlement against Tribridge and sued Allied World, seeking equitable contribution and a declaratory judgment that its coverage obligation is not triggered until Allied World's policy limit is exhausted. The district court granted summary judgment for Great American. Relying on *Atkinson v. Atkinson*, 325 S.E.2d 206, 214 (Ga. 1985), the district court concluded that Georgia law obligates Great American (as an umbrella insurer) to pay only in excess of Allied World (as a primary insurer). It also awarded Great American attorney's fees under O.C.G.A. § 9-11-68(e), concluding that Allied World's arguments were frivolous considering *Atkinson*. This appeal followed.

## II.

Allied World raises two arguments on appeal. First, it argues the district court erred by concluding Allied World's obligation takes priority over Great American's because its policy contains an applicable "excess clause." Second, Allied World argues attorney's fees are inappropriate because its arguments were made in good faith. We address each in turn.

## A.

Allied World argues the district court erred by granting summary judgment for Great American because Great American's insurance policy coverage should take priority. Specifically, Allied World contends that the "excess clause" in its policy obligates it to pay only after Great American.

"We review the district court's grant of summary judgment de novo." *Pelaez v. Gov't Emps. Ins. Co.*, 13 F.4th 1243, 1249 (11th Cir. 2021). Georgia law applies to this insurance contract dispute. *See Bryan v. Hall Chem Co.*, 993 F.2d 831, 834 (11th Cir. 1993) (applying Georgia's conflict of law rules in a Georgia-based diversity suit); *Convergys Corp. v. Keener*, 582 S.E.2d 84, 86−87 (Ga. 2003) (explaining Georgia applies the law where a contract is made or performed).

Georgia law delineates between a "primary" insurance policy—"written to provide primary coverage"—and an "umbrella" policy—operating as "true excess over and above any type of

primary insurance." *Atkinson*, 326 S.E.2d at 214. An insured may have coverage from multiple primary and umbrella insurers, like Tribridge did here (i.e., Amtrust, Allied World, and Great American). That said, all primary coverage must be exhausted before umbrella policy coverage is triggered. *Id.*

Primary policies precede umbrella policies even when the primary policy includes an applicable "excess clause." *Id.* For example, in *Atkinson v. Atkinson*, two insurance companies disputed their priority of payment related to a car crash settlement. *Id.* at 213. One company provided a primary liability policy, and the other provided an umbrella policy. *Id.* But the primary insurance policy included an excess clause: "any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance." *Id.* And in *Atkinson*, the insured was driving a car he did not own at the time of the accident, which the primary insurer argued triggered its excess clause and obligated it to pay *only after* the umbrella insurer. *Id.*

The Georgia Supreme Court disagreed. *Id.* at 214. The court adopted the "prevailing rule" that "umbrella policies, almost without dispute, are regarded as true excess over and above any type of primary coverage, *excess provisions arising in regular policies in any manner, or escape clauses.*" *Id.* (emphasis added). Even despite the primary insurance policy's excess clause, the court determined the policy "was written to provide primary coverage" and should pay before the "true excess policy . . . not written to provide primary coverage." *Id.* In other words, primary policies take priority

to umbrella policies, even when the primary policy includes an applicable excess clause. *Id.*

As the district court explained, excess clauses in primary insurance policies avoid double payment where the insured has other *primary* insurance. For instance, in *Atkinson*, the primary policy's excess clause—seeking to transform the policy to "excess over any other collectible insurance"—might allow it to follow another primary policy. But excess clauses do not allow the primary insurer to step to the back of the line behind umbrella coverage.

The rule in *Atkinson* is dispositive here. Allied World's policy provides "commercial general liability coverage" for "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury.'" On the other hand, Great American's "commercial umbrella coverage" policy only covers "those sums in excess of" listed underlying insurance. *See Progressive Classic Ins. Co. v. Nationwide Mut. Fire Ins. Co.*, 670 S.E.2d 497, 500–01 (Ga. App. 2008) (explaining that an insurance policy was "specifically intended to provide excess coverage" when it required the insured maintain underlying insurance). As in *Atkinson*, the Allied World policy is "written to provide primary coverage," and the Great American policy is the "true excess policy." *Atkinson*, 326 S.E.2d at 214. Accordingly, Allied World's primary policy must be exhausted before the Great American umbrella policy applies.

The Allied World policy's excess clause—seeking to change its obligation when Tribridge is acting as a property manager—is of no consequence here. The clause provides: "With respect to

[Tribridge's] liability arising out of [its] management of property for which [it is] acting as real estate manager, this insurance is excess over any other . . . insurance available to you, whether such insurance is primary or excess." Like the excess clause in *Atkinson*, which purported to make the primary insurance "excess over any other collectible insurance," Allied World's excess clause does not change its obligation vis-à-vis Great American, the umbrella insurer. *Atkinson*, 326 S.E.2d at 214. *Atkinson* simply forecloses Allied World's ability to jump rungs on the insurance tower. *See id.*

Allied World tries to distinguish *Atkinson* by (1) confining its holding to excess clauses involving car ownership, or (2) based on the language in the Great American policy. We disagree.

First, we cannot distinguish *Atkinson* based on the substance of the excess clause. Instead, the Georgia Supreme Court adopted a general "prevailing rule" that umbrella policies are excess over "any type of primary coverage, excess provisions arising in regular policies in any manner, or escape clauses." *Id. Atkinson* gives no indication this "prevailing rule" is confined to excess clauses involving car ownership. *Id.*

Second, Allied world contends the Great American policy language takes our situation outside of *Atkinson*: the Great American policy will precede "other insurance . . . specifically written to be excess of this policy." Allied World's excess clause does not fit this criterion. The Allied World policy is included in the Great American policy's "underlying insurance," making it part of the "retained limit" and thus primary coverage before Great American.

In sum, Allied World is first in the pecking order as the "primary insurer." We affirm the district court's grant of summary judgment for Great American.

## B.

Allied World argues the district court erred by awarding attorney's fees. "We review a district court's award of attorneys' fees for abuse of discretion." *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1293 (11th Cir. 1999).

Under Georgia law, O.C.G.A. § 9-11-68(e), the court may award attorney's fees to the prevailing party after a "verdict or judgment is rendered" if the opposing party presented "frivolous claims or defenses." O.C.G.A. § 9-11-68(e). Even so, as indicated by the statute's title—"Written offers to settle tort claims; liability of refusing party for attorney's fees and expenses"—the statute applies only after the opposing party rejects a written offer to settle a tort claim. *See id.* § 9-11-68(a); *see also Anglin v. Smith*, 853 S.E.2d 142, 144 (Ga. Ct. App. 2020).

Assuming without deciding that Section 9-11-68(e) applies to this contract claim between two insurance companies, we cannot say that Allied World's defenses are "frivolous," warranting its payment of attorney's fees. The statute defines frivolous claims or defenses as those that "lack substantial justification or that [are] not made in good faith" and "to which there existed such a complete absence of any justiciable issue of law or fact that it could not be

reasonably believed a court would accept" the position. O.C.G.A. § 9-11-68(e)(1)(A), (B).

After a hearing, the district court determined that Allied World pursued the litigation in good faith, but the district court nevertheless concluded that Allied World presented frivolous defenses because, in the light of *Atkinson v. Atkinson*, its arguments that its excess clause changed its coverage obligations "lacked substantial justification." Even though we agree with the district court that *Atkinson* forecloses Allied World's arguments about its order of priority, we cannot agree that Allied World's arguments are frivolous. That is, there was not "such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed a court would accept" Allied World's position. O.C.G.A. § 9-11-68(e)(1)(B).

We note that two district court decisions from the same district support Allied World's concededly good faith belief that "extension, modification, or reversal of existing law may be successful." *Id.* § 51-7-80(4); *see ACE Prop. & Cas. Ins. Co. v. Liberty Surplus Ins. Corp.*, No. 1:15-cv-0949-SCJ, 2018 WL 11249930, *10 (N.D. Ga. Mar. 27, 2018); *Phoenix Ins. Co. v. Nationwide Prop. & Cas. Ins. Co.*, No. 1:12-CV-00660-JOF, 2013 WL 11975142, *3-4 (N.D. Ga. Apr. 22, 2013). In the first case, *ACE Property*, the district court read an "excess clause" to alter the priority of obligations between two excess insurers. *ACE Prop. & Cas. Ins. Co.*, 2018 WL 11249930, at *10. Although *ACE Property* concerned two *excess* policies, such that its analysis is not directly on point, the excess

22-12496                Opinion of the Court                11

clause language in *ACE Property* resembles Allied World's excess clause. *See id.* In the second case, *Phoenix*, the court avoided applying *Atkinson* by reading *Atkinson* as limited to "owner/non-owner" policies related to "automobile insurance." *Phoenix Ins. Co.*, 2013 WL 11975142, *3. Although we are unwilling to distinguish *Atkinson* in the same way, this reasoning provides a good faith basis for Allied World to raise the same argument in its favor. *See* O.C.G.A. § 9-11-68(e)(1)(A).

## III.

We **AFFIRM** summary judgment for Great American, but we **REVERSE** the award of attorney's fees.