**LIBERTY INSURANCE CORPORATION, Plaintiff–Appellee**

v.

**DIXIE ELECTRIC, L.L.C., Defendant–Appellant.**

**No. 15–10279.**

United States Court of Appeals, Fifth Circuit.

Dec. 16, 2015.

Catherine L. Hanna, Esq., Hanna & Plaut, L.L.P., Austin, TX, for Plaintiff–Counter Defendant–Appellee.

Don David Martinson, Fanning Harper Martinson Brandt & Kutchin, P.C., Dallas, TX, for Defendant–Counter Claimant–Appellant.

Before STEWART, Chief Judge, and KING, and HIGGINSON, Circuit Judges.

PER CURIAM: *

Plaintiff–Appellee Liberty Insurance Corp. ("Liberty"), the insurer, brought suit

---

* Pursuant to 5TH CIR. R. 47.5, the court has

determined that this opinion should not be

in Texas to obtain a judgment declaring that Liberty had no duty to indemnify Defendant–Appellant Dixie Electric, LLC ("Dixie"), the insured, for a judgment rendered in a New Mexico wrongful death action ("Underlying Lawsuit"). Both parties filed cross-motions for summary judgment. The district court entered a declaratory judgment and summary judgment in favor of Liberty. Dixie appealed. The main issue on appeal is whether Texas law interprets Dixie's Workers Compensation and Employer's Liability Policy (the "Policy") as establishing Liberty's duty to indemnify Dixie for the settlement amount in the Underlying Lawsuit, $1,000,000. For the reasons stated herein, we AFFIRM.

## I.

Eddie Hilburn ("Hilburn"), an employee of Dixie, was killed while on the job after he was electrocuted by an energized line being operated by a co-worker. The summary of facts leading to his death are as follows:

On or about October 1, 2010, Hilburn was working for Dixie, a company hired as a subcontractor for Chevron U.S.A., Inc. Hilburn worked with other members of the Dixie crew as they prepared to install ground wire, remove bank poles, and input new poles for electrical service to a Chevron location in Lea County, New Mexico.

On the day of Hilburn's death, prior to beginning work, the Dixie crew gathered for a meeting to discuss the safety requirements for the job they would perform. Included in that session was information regarding protocol and procedures that would have allowed installation of the new poles to occur without incident. For example, Dixie's Safety Manual informs that mechanical equipment must not be operated within ten feet of energized lines. The Safety Manual further states that only qualified employees and trainees may work on or with exposed energized lines or parts of equipment, and only qualified employees and trainees working under a qualified employee's supervision may work in areas containing unguarded, un-insulated energized lines or parts of equipment operating at fifty volts or more. As the Dixie crew began the process of installing the poles, they encountered electrical power lines that were energized with a voltage exceeding 10,000 volts.

Instead of ensuring that proper safety measures were instituted—e.g., that the lines were properly de-energized, that proper insulating covers were in place, or that the ground wires were out of reach—Dixie, through its supervisor Jack Bara, positioned a pressure digger under the energized lines in violation of the company's safety policy. Only a six-foot space existed between the Dixie employees' mechanical work and the energized lines.

Dixie, through its employee, knew that the electric lines were energized and that the pole had ground wires running the length of the pole and lacked proper insulation. Even with that knowledge, Dixie instructed its employees to work in close proximity to the power lines. As a result of the violations of Dixie's own policies and federal regulations, when the pressure digger was raised, electricity arced from the energized lines and killed Hilburn.

## II.

On January 18, 2011, Hilburn's successors and the representatives of his estate

published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

filed the Underlying Lawsuit against Dixie pursuant to New Mexico's wrongful death statute and *Delgado v. Phelps Dodge Chino, Inc.*, 131 N.M. 272, 34 P.3d 1148 (2001).[1] On February 27, 2015, after the parties settled, Liberty filed suit and sought a declaratory judgment that it owed no duty to indemnify Dixie for Dixie's settlement under the terms of the Policy.[2] Liberty implored the district court to further declare that the claims alleged in the Underlying Lawsuit are not for "bodily injury by accident." Dixie filed a counterclaim seeking a declaration to the opposite. Both parties filed cross-motions for summary judgment in support of their contentions.

The court concluded that in order to determine whether Liberty must indemnify Dixie for willfully causing injury to its employee Hilburn, it must address: (1) whether Dixie's willful conduct was an "accident" under the terms of the Policy; and if so (2) whether the district court may equate New Mexico's cause of action for willful conduct, as defined in *Delgado*, with a Texas gross negligence cause of action to require Liberty to indemnify Dixie for payment following Hilburn's death.

After considering the plain language of the Policy, Texas law on the duty to indemnify, the definition of "accident" under Texas and New Mexico law, the requirements of a claim under New Mexico law, and the evidence developed in the Underlying Lawsuit, the district court determined that Liberty has no duty to indemnify Dixie because the Policy only provides coverage for "bodily injury by accident" that has not been caused by the intentional conduct of the employer. The court found that because Texas courts, like New Mexico courts, define accident as an unexpected event, any liability-producing event that would satisfy the New Mexico standard for Dixie's liability in the Underlying Lawsuit would necessarily preclude coverage for Dixie under the Policy.

The court also recognized that coverage under New Mexico law exists for claims that result from employer conduct that is "willful"—conduct that is not intentional but includes more than mere negligence. However, the court refused to equate the New Mexico "willful" conduct standard with the standard in Texas, which would require an insurer to indemnify the insured for conduct that equates to gross negligence. Specifically, the court stated that gross negligence is solely an extreme species of negligence, not a form of intentional tort with a high burden of proof as required under the New Mexico "willful" standard. The district court denied Dixie's motion for summary judgment, granted summary judgment in favor of Liberty, and dismissed the claims against Liberty with prejudice. Dixie timely appealed.

---

1. The *Delgado v. Phelps Dodge Chino, Inc.* court recognized that when an employer intentionally inflicts or willfully causes an employee to suffer an injury that would otherwise be exclusively compensable under the New Mexico Workers' Compensation Act, the exclusivity provisions of the Act do not apply and the employee may sue his employer in tort. *See* 131 N.M. 272, 34 P.3d 1148 (2001).

2. Under the provision of the Policy entitled "PART TWO—EMPLOYERS LIABILITY INSURANCE," the Dixie–Liberty liability insurance extends to "bodily injury by accident" that arises out of and in the course of the injured employee's employment with Dixie. However, the Policy excludes coverage for (1) punitive or exemplary damages because of bodily injury to an employee employed in violation of law, or (2) bodily injury that is intentionally caused or aggravated by Dixie. Liberty agreed to pay "all sums [that Dixie] legally must pay as damages because of bodily injury to [Dixie's] employees, provided the bodily injury is covered by this Employers Liability Insurance."

## III.

We review a district court's grant of summary judgment *de novo*, applying the same legal standards that the district court applied. *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 259–60 (5th Cir.2003). We view the evidence in the light most favorable to the nonmoving party and may affirm only where there is "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." *Id.* at 260. A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Anderson*, 477 U.S. at 254–55, 106 S.Ct. 2505 ("Credibility determinations ... are jury functions, not those of a judge.").

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the nonmovant must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998) ("The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim."). Mere conclusory allegations are not competent summary judgment evidence and are insufficient to defeat a motion for summary judgment. *See Eason v. Thaler*, 73

F.3d 1322, 1325 (5th Cir.1996). Moreover, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.1994). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (citation omitted). Thus, if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Where, as here, parties have filed crossmotions for summary judgment, each movant bears the burden of showing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law. *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 562 (5th Cir.2010).

## IV.

After considering the parties' arguments as briefed on appeal, and after reviewing the record, the applicable law, and the district court's judgment and reasoning, we AFFIRM the district court's judgment and adopt its analysis in full.