# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| GRAPHIC PACKAGING INTERNATIONAL, LLC, | ) ) ) | |
| Plaintiff, | ) ) ) | C.A. No. N22C-03-192 AML CCLD |
| v. | ) ) | |
| EVEREST NATIONAL INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

Submitted: February 23, 2023
Decided: May 8, 2023

## MEMORANDUM OPINION

Upon Defendant's Motion for Judgment on the Pleadings:
**GRANTED**

William J. Burton, Esquire of BARNES & THORNBURG LLP, Wilmington, Delaware; *Attorneys for Plaintiff Graphic Packaging International, LLC*.

David A. Felice, Esquire of BAILEY & GLASSER, LLP, Wilmington, Delaware, *Attorneys for Defendant Everest National Insurance Company.*

**LEGROW, J.**

The plaintiff in this case seeks coverage under an employers' liability insurance policy for losses the plaintiff incurred litigating and settling a workplace injury action filed by its employee. The insurance policy at issue provided coverage for "bodily injury by accident." In the underlying litigation, the employer faced a claim that it knowingly engaged in conduct that was substantially certain to injure its employee. The employer settled the underlying litigation shortly before trial, and the insurance company denied coverage for the settlement on the basis that the litigation involved a claim for intentional tortious conduct, rather than a claim for an accidental injury within the scope of the policy's coverage.

The incident and associated injury that formed the basis for the underlying litigation occurred in Texas, and Texas law therefore applied to the claims in that case. Under settled Texas law, Texas's workers' compensation act provides the exclusive remedy for an employee injured in the course of employment. The only exception to that rule is when the employer commits an intentional tort that causes the injury. Accordingly, the only claim the employee brought in the underlying litigation was that the employer's conduct "[rose] to the level of an intentional tort." The trial court's decision denying summary judgment confirmed that the only claim the jury would consider was one for intentional misconduct by the employer. The employer settled the litigation before the jury could answer that question.

1

In the face of these undisputed facts, the employer contends it nevertheless is entitled to coverage under the insurance policy because the employer settled at a time when it was facing the possibility the trial court would expand the case beyond an intentional tort claim. In support of this argument, the employer points to the employee's proposed jury instructions, which were filed with the trial court before the case settled. But those proposed jury instructions do not support the employer's coverage position in this case. First, proposed jury instructions that were never accepted or even ruled upon by the trial court cannot expand the scope of the underlying litigation. Second, even if this Court could consider the proposed instructions in deciding the employer's coverage claim, those proposed instructions cannot be read as asking the jury to decide anything other than an intentional tort claim. Accordingly, the insurance company is entitled to judgment in its favor on the employer's coverage claim.

## FACTUAL BACKGROUND

Unless otherwise noted, the following facts are drawn from the parties' pleadings and the documents incorporated by reference therein.

**The Parties and Policies at Issue**

Plaintiff Graphic Packaging International ("Graphic"), a subsidiary of Graphic Packaging Holding Company ("GPHC"), provides sustainable paper-based packaging solutions for a variety of food, beverage, foodservice, and other consumer

2

products companies.[1] GPHC's primary insurer, Arch Insurance Company ("Arch"), issued a Workers' Compensation and Employers' Liability policy to GPHC and Graphic for the period from June 30, 2018, to June 30, 2019 (the "Arch Policy").[2] The Arch Policy contained a $1 million per occurrence limit and provided two separate coverages.[3] In Part One, the Arch Policy insured Graphic's obligations under state workers' compensation laws.[4] In Part Two, the Arch Policy insured Graphic for employee injury claims outside of workers' compensation.[5]

Defendant Everest National Insurance Company ("Everest") provided a Commercial Umbrella Liability Policy to GPHC and its subsidiaries, including Graphic, for the period from June 30, 2018, to June 30, 2019 (the "Everest Policy").[6] The Everest Policy contained a $25 million per occurrence coverage limit in excess of the Arch Policy.[7] The Everest Policy also included a "follow form endorsement" that stated the Everest Policy "will follow the exact warranties, terms, conditions, exclusions and limitations contained in the 'underlying insurance.'"[8] The Arch Policy is the underlying insurance for purposes of this case.[9]

---

[1] Graphic Compl. ¶ 14.
[2] *Id.* ¶ 17. Ex. 2.
[3] *Id.*
[4] *Id.* at Part One.
[5] *Id.* at Part Two.
[6] *Id.* ¶ 15. Everest Policy, Ex.1.
[7] *Id.* ¶¶ 18-19.
[8] *Id.* ¶ 20. Ex. 1 at 60.
[9] *Id.*

The Arch Policy offers the following relevant coverage: "This employers liability insurance applies to bodily injury by accident or bodily injury by disease."[10] The Arch Policy further stated Arch "will pay all sums that [Graphic] legally must pay as damages because of bodily injury to [Graphic's] employees, provided the bodily injury is covered by this Employers Liability Insurance."[11] The Arch Policy excluded coverage for "bodily injury intentionally caused or aggravated by [Graphic]."[12]

**The Crompton Action**

On January 16, 2019, Montgomery Crompton ("Mr. Crompton"), a Graphic employee, sustained an injury while working at a Graphic paper mill in Texas.[13] Mr. Crompton maintained component equipment in an area of the mill where steam was used to generate operational power.[14] During the steam production, it was important that a sudden intense release of steam, known as a "blowdown," occur.[15] In July 2018, a hole developed in the blowdown header, requiring placement of a temporary steel patch until the mill could be shut down for repairs.[16] According to the

---

[10] *Id.* Ex. 2. Arch Policy, Part Two Employers Liability Insurance, A. How This Insurance Applies.
[11] *Id.*, B. We Will Pay.
[12] *Id.*, C. Excl., 5.
[13] *See* Crompton Compl. ¶ 3.01. Def.'s Mot. for J. on the Pleadings (hereinafter, "Def.'s Mot."), Ex. A.
[14] *Id.* ¶¶ 3.01-3.02. Def.'s Mot., Ex. A.
[15] *Id.* ¶ 3.03.
[16] *Id.* ¶¶ 3.05-3.06.

complaint in the underlying litigation, Graphic knew the safest way to repair the blowdown header was to shut down the production process, but Graphic instead ordered Mr. Crompton to manually perform the steel patch.[17]

On the morning of January 16, 2019, when Mr. Crompton started the repair, he noticed hot water leaking from the hole in the header and told his supervisor he was concerned for his safety. Mr. Crompton's supervisor stated he would turn additional valves to ensure there was no steam surge.[18] Mr. Crompton returned to the blowdown header, and while he was working on the steel patch, a blowdown occurred, covering him in scalding steam that severely burned him.[19] Immediately after the accident, Mr. Crompton began receiving workers' compensation benefits, which included both medical and indemnity benefits, from Graphic and Arch.[20]

Because the accident occurred in Texas, Mr. Crompton's injuries and his ability to recover against Graphic is governed by Texas law. The Texas Workers' Compensation Act ("TWCA") controls the relationship and conduct between an employee who is injured in the course and scope of his employment and an employer who has workers' compensation insurance.[21] The TWCA provides that statutory benefits are the exclusive remedy for a covered employee or his legal beneficiary

---

[17] *Id.* ¶¶ 3.05-3.09.
[18] *Id.* ¶ 3.09.
[19] *Id.* ¶ 3.10.
[20] Graphic Compl. ¶ 24.
[21] Pl.'s Answ. Br. Ex. A. Burton Decl. at 4.

5

against his employer for work-related injury or death.[22] The TWCA, however, does not apply to intentional injury claims. When an employer commits an intentional tort, a common-law exception exists to the otherwise exclusive remedy created by the TWCA.[23] For the intentional tort exception to the TWCA to apply, an employer must believe its actions are substantially certain to injure the employee.[24]

On June 3, 2020, Mr. Crompton and his wife ("The Cromptons") filed the underlying litigation against Graphic in the United States District Court for the Eastern District of Texas[25] (the "Crompton Action"), alleging "the conduct of [Graphic] rises to the level of an intentional tort; specifically, [Graphic] had knowledge to a substantial certainty that its conduct would bring about harm to Crompton."[26] Arch, as Graphic's primary insurer, defended Graphic in the Crompton Action.

Graphic and the Cromptons both moved for summary judgment on exclusive remedy, election of remedies, and whether Rusty McCright, the Graphic employee

---

[22] TEX. LAB. CODE § 408.001(a) ("Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee."); *Mo-Vac Serv. Co., Inc. v. Escobedo*, 603 S.W.3d 119, 120 (Tex. 2020). Graphic does not dispute the exclusive nature of the remedy afforded by the TWCA.

[23] TEX. LAB. CODE § 408.001(a); *Berkel & Co. Contractors, Inc. v. Lee*, 612 S.W.3d 280, 284 (Tex. 2020).

[24] *Berkel*, 612 S.W.3d at 284.

[25] *Crompton v. Graphic Packaging Int'l, LLC*, 2021 WL 6333021 (E.D. Tex. Nov. 19, 2021).

[26] Crompton Action Compl. ¶ 3.16. Def.'s Mot., Ex. A.

who allegedly caused the accident, was a "vice-principal" of Graphic such that his actions could be deemed Graphic's actions.[27]  On November 19, 2021, the Texas court denied the parties' cross-motions for summary judgment.[28]  The court held there were material factual disputes as to several issues in the case, including, 1) whether McCright believed Mr. Crompton's injury was substantially certain to occur; 2) whether McCright was a "vice-principal" such that his conduct could be attributed to Graphic; and 3) whether the Cromptons elected workers' compensation as their sole remedy.[29]

The Crompton Action was initially scheduled for trial on January 24, 2022.[30] The Cromptons filed their proposed jury instructions on September 17, 2021.  One of the proposed instructions stated "[The Cromptons] . . . contend that [Graphic] breached nondelegable or absolute duties owed to Mr. Crompton."[31]  In addition, in Graphic's view, the proposed instructions stated Graphic could be liable for breach of a nondelegable or absolute duty even if McCright was not a vice-principal.[32] Graphic contends the first question on the Cromptons' proposed verdict form also

---

[27] *Crompton*, 2021 WL 6333021, at *2.
[28] *Id.* at *4-5.
[29] *Id.* at *2-3. Graphic conceded at oral argument that this election of remedies issue is not relevant to the coverage issue before the court.
[30] Graphic Compl. ¶ 30; Pl.'s Answ. Br. at 4. Although Plaintiff's brief refers to a January 2021 trial date, it is clear from context the initial trial date was in January 2022.
[31] Pl.'s Answ. Br. Ex. B at 10-13. Jury Instructions No. 9.
[32] *Id.* at 13. Jury Instructions No. 9(D).

asked the jury to base liability on the same nondelegable or absolute duties.[33] Three other questions on the proposed verdict form asked the jury to base Graphic's liability on whether McCright was a Graphic vice-principal and whether he believed injury to Mr. Crompton was substantially certain to occur.[34]

Everest "acknowledged" the Cromptons' proposed jury instructions. In response to Graphic's coverage request, which rested in part on the Cromptons' proposed jury instructions, Everest stated that "[a]s the Arch policy has not exhausted by payment of judgment or settlement, Everest has no duty to defend or indemnify Graphic at this time."[35] On January 11, 2022, Graphic's counsel in the Crompton Action sent a pretrial report to Arch, Everest, and Graphic[36] stating, among other things, that: (1) the Cromptons' settlement demand was far in excess of the Arch Policy limit, but well within the Everest Policy limit; (2) a federal magistrate judge proposed reconvening the settlement conference over which she had previously presided in the case; and (3) Graphic's counsel recommended settling for an amount above the Arch Policy limit but within the Everest Policy limit.[37]

On January 11, 2022, Arch offered to tender its $1 million employers' liability limit to Everest to use to attempt to settle the Crompton Action.[38] On January 12,

---

[33] *Id.* Verdict Form at 2.
[34] *Id.* at 2-4.
[35] Graphic Compl. Ex. 4 at 2.
[36] *Id.* ¶ 30; Pl.'s Answ. Br. Ex. C. Burton Decl.
[37] *Id.*
[38] *Id.* ¶¶ 31–32.

8

2022, Everest rejected Arch's tender because Everest "continue[d] to believe that no coverage exist[ed] for any liability Graphic may face in the pending suit."[39]

The parties in the Crompton Action participated in a settlement conference on January 18, 2022.[40]  During that conference, the Cromptons reduced their demands, and Arch reiterated that its entire $1 million policy limit could be used by Everest and Graphic to settle the case.  Everest refused to give Graphic authority to use any portion of the Everest Policy to settle the Crompton Action.[41]  Graphic is of the view that Everest's rejection of coverage caused Graphic to lose the opportunity to settle the Crompton Action during the federal court's settlement conference, without any assurance the Cromptons would have been open to settlement at a later date for the same amount.[42]

The Texas court continued the trial to April 18, 2022, and in March of that year, the federal magistrate judge submitted a mediator's proposal to both sides with a settlement amount well within the Everest policy limit and lower than the Cromptons had demanded during the January 18, 2022 settlement conference.[43] Everest again refused to offer any portion of the Everest Policy to be used toward settlement, maintaining its "no coverage" position.[44]  Graphic, however, accepted

---

[39] *Id.* ¶ 34. Ex. 5 at 2.
[40] *Id.* ¶ 39.
[41] *Id.* ¶ 40.
[42] *Id.* ¶ 40 (d).
[43] *Id.* ¶ 42.
[44] *Id.* ¶ 45.

the mediator's proposal.[45]  The Cromptons also accepted the mediator's proposal,

and Graphic paid the portion of the settlement in excess of Arch's policy limit.[46]

**This Coverage Action**

On March 24, 2022, Graphic filed a breach of contract claim against Everest

for failure to cover the Crompton Action, seeking to recover the amount Graphic

paid to settle the Cromptons' claims.[47]  Everest answered and moved for judgment

on the pleadings.  After full briefing, the Court heard oral argument and then took

the motion under advisement.

## PARTIES' CONTENTIONS

In support of its motion for judgment on the pleadings, Everest contends

Graphic cannot meet its burden to prove the Crompton settlement fell within the

Policy's grant of coverage because it is undisputed that the Crompton Action only

involved an intentional tort claim against Graphic.[48]  Everest also contends the law

is clear that Everest is entitled to make its own coverage determination and is not

bound by any decision Arch made regarding coverage for the Crompton Action.[49]

In response, Graphic asserts that although there is no dispute that Texas law

limited the Cromptons' recovery to workers' compensation unless they could prove

---

[45] *Id.* ¶ 46.
[46] *Id.*
[47] Def.'s Mot. at 1-2.
[48] *Id.* at 2.
[49] *Id.*

intentional tort, the Cromptons' proposed jury instructions signaled they were attempting to broaden the claims to negligence or strict liability, and it was unclear whether the Texas court would allow those broader claims to go to the jury.[50] Graphic argues this uncertainty as to the scope of claims caused it to settle, and Graphic settled the Crompton Action at a time when the scope of the case included possible negligence or strict liability claims.[51]

## **ANALYSIS**

In deciding a motion for judgment on the pleadings under Superior Court Civil Rule 12(c), the Court accepts the truth of all well-pleaded facts alleged in the pleadings and draws all reasonable factual inferences in favor of the non-moving party.[52] The Court accords the party opposing a Rule 12(c) motion the same benefits as a party defending a motion to dismiss under Rule 12(b)(6).[53] Accordingly, this Court will grant a motion for judgment on the pleadings only if, after drawing all reasonable inferences in favor of the non-moving party, there is no material fact in dispute and the moving party is entitled to judgment as a matter of law.[54] A Rule

---

[50] Pl.'s Answ. Br. at 14-16.
[51] *Id.*
[52] *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993).
[53] *Alcoa World Alumina LLC v. Glencore Ltd.*, 2016 WL 521193, at *6 (Del. Super. Ct. Feb. 8, 2016), *aff'd sub nom.*, *Glencore Ltd. v. St. Croix Alumina, LLC*, 2016 WL 6575167 (Del. Nov. 4, 2016); *see Silver Lake Off. Plaza, LLC v. Lanard & Axilbund, Inc.*, 2014 WL 595378, at *6 (Del. Super. Ct. Jan. 17, 2014) ("The standard for a motion for judgment on the pleadings is 'almost identical' to the standard for a motion to dismiss." (Internal quotation marks omitted)).
[54] *V&M Aerospace LLC v. V&M Co.*, 2019 WL 3238920, at *3 (Del. Super. Ct. July 18, 2019).

11

12(c) motion is "a proper framework for enforcing unambiguous contracts," which have only one reasonable meaning and therefore do not create material disputes of fact.[55]

## I. It is clear as a matter of law that the Crompton Action did not fall within the scope of Everest's coverage obligation.

Graphic, as the insured, bears the burden of proving it is entitled to coverage under the terms of the Everest Policy.[56] The Everest Policy's insuring agreement, incorporated from the underlying Arch Policy, states: "This employers liability insurance applies to bodily injury by accident or bodily injury by disease."[57] Bodily injury caused by intentional tortious conduct is different from bodily injury caused "by accident." Courts interpret the term "accident" in an insurance policy to mean "an event which takes place without one's foresight or expectation or design."[58]

---

[55] *Lillis v. AT&T Corp.*, 904 A.2d 325, 329–30 (Del. Ch. 2006) (alteration omitted); *see also VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 615 (Del. 2003) (observing that ambiguity creates a fact dispute and that a court cannot dismiss breach of contract allegations unless the movant's construction of the disputed term "is the *only* reasonable construction as a matter of law").

[56] The parties disagree as to whether Texas or Georgia law governs the policy, but they agree there is no difference between Texas and Georgia law for purposes of this coverage dispute, so no conflict of law analysis is required. *Travelers Home & Marine Ins. Co. v. Castellanos*, 297 Ga. 174, 176 (2015) ("an insured claiming an insurance benefit has the burden of proving that a claim falls within the coverage of the policy") (quotes omitted); *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010) ("the insured has the burden of establishing coverage under the terms of the policy").

[57] Graphic Compl. Ex. 2. Arch Policy, Part Two Employers Liability Insurance, A. How This Insurance Applies.

[58] *SawHorse, Inc. v. S. Guar. Ins. Co. of Georgia*, 269 Ga. App. 493, 498 (2004); *Argonaut Southwest Ins. Co. v. Maupin*, 500 S.W.2d 633, 634 (Tex. 1973) (accident defined as the "negligent acts of the insured causing damage which is undesigned and unexpected.").

Although the cases interpreting this language arose in the context of general liability policies, that factual distinction does not change the applicability of the definition. The meaning of "accident" is unambiguous.[59] Graphic has not pointed to any other definition or any ambiguity in the word "accident," nor can this Court find any.

The meaning of the word "accident" is completely at odds with Graphic's claim for coverage for the Crompton Action. The Texas Supreme Court has held that in order for the intentional tort exception to the TWCA to apply, an injured employee must prove his employer believed its actions were substantially certain to cause him injury. In *Mo-Vac Serv. Co., Inc. v. Escobedo,*[60] the deceased employee's estate filed a wrongful death and survival action against the employer, a truck and warehouse company that serviced the oil patch from several cities in Texas.[61] The employer hired drivers to haul liquids to and from drilling sites in tanker trucks, and the deceased employee was one of the drivers.[62] The employee died when his rig ran off the highway and rolled over.[63] The deceased employee's estate argued the employee fell asleep at the wheel because he was forced to work grueling hours.[64]

---

[59] *SawHorse,* 269 Ga. App. at 498; *Argonaut,* 500 S.W.2d at 634 (accident defined as the "negligent acts of the insured causing damage which is undesigned and unexpected.").
[60] *Mo-Vac*, at 120.
[61] *Id.* at 121.
[62] *Id.*
[63] *Id.*
[64] *Id.*

In holding that the employee could not maintain an action against his employer, the Texas Supreme Court explained that "the fundamental difference between negligent injury, or even grossly negligent injury, and intentional injury is the specific intent to inflict injury."[65] "[T]he defendant must have actually desired or intended to create the [injury] or must have actually known or believed that the [injury] would result."[66] The Court held that for the intentional tort exception to the exclusive remedy to apply, the employer must have believed its actions were substantially certain to result in a particular injury to a particular employee, not merely highly likely to increase overall risks to employees in the workplace.[67] Because the deceased employee's estate had not provided any specific evidence that the employer believed the employee's injury was substantially certain to occur, the claims were barred by the TWCA's exclusive remedy provision.[68]

Similarly, in *Berkel & Co. Contractors, Inc. v. Lee,*[69] a general contractor's injured employee brought negligence, gross negligence, and intentional injury claims against a subcontractor for injuries the employee sustained on the job site.[70] The Texas Supreme Court discussed the intentional tort exception to the workers' compensation statute and reiterated the exception does not apply to any type of

---

[65] *Id.* at 128.
[66] *Id.* at 130.
[67] *Id.*
[68] *Id.* at 132.
[69] *Berkel*, 612 S.W.3d at 280.
[70] *Id.* at 283.

negligence claim. The *Berkel* Court explained "the determinative factor must be not the gravity or depravity of the employer's conduct but rather the narrow issue of intentional versus accidental quality of the injury."[71] The Texas Supreme Court held the evidence did not show that the employer knew he would injure the employee.[72]

These two recent cases from Texas's highest court leave no room for Graphic's coverage claim in this case. The controlling Texas law is that only a "substantially certain" intentional injury could have made Graphic liable in the Crompton Action. The Cromptons alleged in their complaint that Graphic knew or believed its actions would injure Mr. Crompton.[73] That claim does not, and cannot be construed to, fall within the policy's coverage for "bodily injury by accident," since such coverage necessarily is confined to conduct without "foresight, expectation, or design."

In an effort to muddy these otherwise clear waters, Graphic asserts that at the time of settlement, the Crompton Action included theories of negligence and strict liability, both of which fall within the scope of Graphic's employers' liability coverage.[74] Specifically, Graphic argues the Cromptons filed proposed jury instructions and a proposed verdict form that included negligence and strict liability

---

[71] *Id.* at 289.

[72] *Id.*

[73] See Crompton Compl., Ex. A at ¶3.16 ("the conduct of [Graphic] rises to the level of an intentional tort; specifically, Defendant had knowledge to a substantial certainty that its conduct would bring about harm to Crompton.").

[74] Pl.'s Answ. Br. at 1.

theories, and Graphic settled when confronted with the risk that the trial court would allow a jury to consider those claims.[75]

Graphic has not demonstrated that the Crompton Action encompassed any claim other than one for intentional tort. A party's unilaterally proposed jury instructions, which never were ruled upon by the Texas court, do not establish or expand the scope of underlying litigation for purposes of determining insurance coverage. And, even if the proposed instructions were relevant, they do not support Graphic's argument here. The proposed instructions asked the jury to reach a verdict based on substantial certainty and McCright's vice-principal position.[76] The Cromptons' proposed verdict form also made it clear that if the jury did not find substantial certainty, no further deliberations were needed, and a verdict should be returned in Graphic's favor.[77]

Although Graphic points to language in the proposed jury instructions referencing non-delegable and absolute duties owed by Graphic,[78] those proposed instructions only were relevant to the vice-principal finding, which was necessary before a jury could impute McCright's actions to Graphic. The references to a non-

---

[75] *Id.* at 14.

[76] *Id.,* Ex. B. Verdict Form at Qs. 1-3.

[77] *Id.* at Q. 3. Question 3 instructs the jury to skip the remaining questions and proceed to the end of the verdict form if they did not find that McCright believed injury to Mr. Crompton was substantially certain to occur. *Id.*

[78] *Id.* at 4-6, 15. In Graphic's view, "the plaintiffs further proposed that the jury be instructed that Graphic had a non-delegable or absolute duty." (Jury Instruction No. 9 C.) Graphic continues to believe the plaintiffs' proposed jury instructions and verdict form misstated Texas law. *Id.* at 15.

delegable duty do not suggest the Crompton Action involved any claim other than one for intentional tort. The other sections of the jury instructions clearly state intent was needed to prove Graphic was liable.[79] The Texas court's summary judgment decision also confirmed the Cromptons could prevail only if they proved Graphic, through McCright, intended to injure Mr. Crompton.[80] At the time of the settlement, therefore, Graphic was facing only an intentional tort claim. No other reasonable conclusion may be drawn from the record.

Intentional torts fall outside the scope of the policy's coverage for accidental injury. Other courts have reached the same conclusion in similar circumstances.[81] In its opposition to the motion, Graphic obliquely argued Everest nonetheless had a duty to consider Graphic's interests at the time the settlement was being negotiated.[82] Graphic's point is not entirely clear, but Graphic confirmed at oral argument that it is not arguing Everest had a distinct contractual obligation as it related to the settlement negotiations. Graphic conceded at argument that if the Court finds the Policy affords no coverage for the Crompton Action, Everest had no independent contractual obligation to settle the claim, and this argument therefore is moot.

---

[79] *Id.* Jury Instructions Nos. 3-11.
[80] *Crompton*, 2021 WL 6333021, at *4-5.
[81] The Tenth Circuit examined nearly identical circumstances in *Cudd Pressure Control, Inc. v. New Hampshire Ins. Co.,* 645 F. App'x 733, 739 (10th Cir. 2016). The Fifth Circuit reached the same conclusion in *Liberty Ins. Corp. v. Dixie Elec., LLC*, 637 F. App'x 113 (5th Cir. 2015), adopting the District Court' analysis set forth in *Liberty Ins. Corp. v. Dixie Elec.*, 101 F. Supp. 3d 575, 582 (N.D. Tex. 2015).
[82] Pl.'s Answ. Br. at 24-26.

**II.      Having concluded Graphic cannot establish a coverage obligation, the intentional conduct exclusion is irrelevant.**

The Everest Policy contains an exclusion for injury "intentionally caused or aggravated" by Graphic.[83]  But the Cromptons' claim against Graphic does not fall within the Everest Policy's scope of coverage.  The Court therefore does not need to consider or resolve Everest's alternative argument regarding the Policy's exclusion for expected or intended injury.

## <u>CONCLUSION</u>

For the foregoing reasons, Everest's Motion for Judgment on the Pleadings is **GRANTED**.

**IT IS SO ORDERED.**

---

[83] Graphic Compl. Ex. 2, C. Excl., 5.